# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00733-CV

**Countrywide Home Loans, Inc., Appellant**

**v.**

**James A. Howard, Receiver for Tesher Corp., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-05-002580, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

Countrywide Home Loans, Inc. appeals a summary judgment rendered in favor of James A. Howard, as receiver for Tesher Corp. The trial court found that Howard's rights in a piece of real property have priority over Countrywide's lien on the same property because Howard had filed a notice of lis pendens before Countrywide filed its lien, which provided constructive notice to Countrywide of Howard's interest in the property. Countrywide argues that Howard's notice of lis pendens was improper and should be given no legal effect because Howard sought only a constructive trust on the property, which is a collateral interest in the property. Countrywide urges that in holding that Howard's rights have priority, the trial court necessarily decided that Howard's filing of the lis pendens was proper. Countrywide also complains that the trial court abused its discretion by awarding attorney's fees to Howard. Because we agree that the interest claimed by

Howard was merely collateral and not a direct interest in the property, the lis pendens was improper and we will reverse the trial court's judgment.

## BACKGROUND

Tesher Corp., an insurance entity with a short and unseemly history, was formed in January 2001. After only 18 months in business, Tesher was placed into receivership by the 345th Judicial District Court of Travis County. Upon being appointed receiver, Howard discovered that in October 2001, Rebecca J. McLain, a Tesher employee involved in an "intimate personal relationship" with Tesher's president and sole shareholder, John Tesseyman, obtained $144,500 of Tesher's funds to purchase a piece of real property located in Tyler, Texas.[1] The company also purchased a 2001 Volvo for McLain using $31,808.11 in company funds despite the fact that the car was titled in McLain's name. In addition, the company paid $10,000 in cash to McLain from Tesher's premium "trust" account.

After uncovering these questionable transactions, Howard sued McLain in August 2003, alleging that McLain had borrowed money from Tesher on an oral promise to repay, and that McLain had agreed to repay the funds to Tesher when she refinanced the property. Howard pleaded the following causes of action in his original petition: common-law fraud, constructive fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, conversion, and negligence. Howard prayed for a judgment awarding actual damages of $185,300 and an unspecified amount of exemplary damages and, in the alternative, prayed for a judgment decreeing a constructive

---

[1] McLain stated that the funds represented a gift.

trust on the Tyler property and Volvo with McLain as the constructive trustee for the benefit of Tesher and a judgment ordering McLain to convey the property to Tesher.

Shortly after filing the lawsuit against McLain, on September 5, 2003, Howard filed a notice of lis pendens in the real-property records of Smith County, where the Tyler property was located, stating that he had filed an action that "ultimately seeks title to the property via a constructive trust." On September 25, 2003, McLain borrowed $100,000 from Aames Funding Corporation using the Tyler property as collateral. A week later, Aames assigned the loan to Countrywide. Neither Aames nor Countrywide searched the Smith County real-property records; neither had actual notice of Howard's claim against the property.

On June 28, 2005, Countrywide intervened in Howard's suit against McLain, requesting a declaratory judgment that its lien on the Tyler property securing the $100,000 loan to McLain has priority over any rights that Howard may acquire in the property. Countrywide argued that because the claims made by Howard did not authorize the filing of a notice of lis pendens, the notice of lis pendens did not provide constructive notice to Countrywide of Howard's claim against the property. Howard also requested a declaratory judgment that his rights in the property have priority over Countrywide's lien. Both parties filed summary-judgment motions. The trial court granted Howard's motion and denied Countrywide's. This appeal followed.

## DISCUSSION

### Standard of Review

Summary judgment is proper where the movant establishes that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the

3

issues expressly set out in the motion." Tex. R. Civ. P. 166a(c).  We review the summary judgment de novo, take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review the evidence presented, determine the questions presented, and render the judgment the trial court should have rendered if we determine that it erred.  *Id.*

**Lis Pendens**

A lis pendens is a "notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation." *Black's Law Dictionary* 942–43 (7th ed. 1999).  The purposes of a notice of lis pendens are to put those interested in a particular tract of land on inquiry about the facts and issues involved in the suit and to put prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation.  *Gene Hill Equip. Co. v. Merryman*, 771 S.W.2d 207, 209 (Tex. App.—Austin 1989, no writ).  As one author recently noted,

> Lis pendens can be a powerful tool that can provide significant protection and leverage to the party seeking to establish an interest in a specific parcel of real estate. A lis pendens timely and properly filed can effectively halt very large real estate sales involving millions of dollars pending the outcome of litigation.

Gary Powell, *Real Estate Remedies: Lis Pendens*, 32 Tex. St. Bar Sec. Litig. Rep. 70, 70 (2005) (footnote call numbers omitted).

A notice of lis pendens may be filed during the pendency of an action involving (1) title to real property, (2) the establishment of an interest in real property, or (3) the enforcement of an encumbrance against real property. Tex. Prop. Code Ann. § 12.007(a) (West 2004). "An instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument . . . ." *Id.* § 13.002(1) (West 2004). However, a document filed for record without statutory authorization does not impart constructive notice to third parties. *See Burnham v. Chandler*, 15 Tex. 441, 443 (1855) ("[A]s the registration law does not require or authorize the instrument of assignment referred to in this case to be recorded, the record would not be notice of the existence of such instrument.") (internal citations omitted); *Tandy v. Dickinson*, 371 S.W.2d 81, 82–83 (Tex. Civ. App.—Amarillo 1963, no writ) ("[T]he fact that Defendants' Exhibit I had been filed of record did not constitute constructive notice to appellee and his predecessor in title because it . . . was not such an instrument as to authorize it to be recorded."); *City of Abilene v. Fryar*, 143 S.W.2d 654, 659 (Tex. Civ. App.—Eastland 1940, no writ) ("[A]n instrument filed or recorded in violation of an express statutory prohibition would not constitute constructive notice.")

To satisfy section 12.007, the suit on which the lis pendens is based must claim a direct interest in real property rather than a collateral interest. *In re Collins*, 172 S.W.3d 287, 293 (Tex. App.—Fort Worth 2005, no pet.). In other words, the property against which the lis pendens is filed must be the subject matter of the underlying lawsuit. If the suit seeks a property interest only to secure the recovery of damages or other relief that the plaintiff may be awarded, the interest is

5

merely collateral and will not support a lis pendens. *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995).

### *Pleadings to be Considered*

Before turning to the merits, we must resolve a dispute between the parties concerning what evidence may be considered when determining whether Howard's notice of lis pendens was properly filed.[2] Countrywide asserts that only Howard's original petition, which was the pleading on file at the time the loan was made to McLain, may properly be considered. Howard, on the other hand, argues that his amended petition, which was filed after Aames had loaned the money to McLain, after the loan had been assigned to Countrywide, and after Countrywide intervened in Howard's suit against McLain, may be considered.[3]

We agree with Countrywide—the validity of a filing of a notice of lis pendens is judged by the pleadings on file at the time the transaction with respect to the property occurred. *Letcher v. Reese*, 24 Tex. Civ. App. 537, 540, 60 S.W. 256, 257 (Fort Worth 1900, no writ) ("Unless the suit as made by the pleadings on file at the time the Reeses bought was of such a nature as to authorize the court to declare and foreclose a lien on the lots, no amendment changing the nature of

---

[2] It is unclear whether the trial court considered Howard's first amended petition. The first amended petition was included in Howard's summary-judgment evidence. Countrywide objected to its inclusion, but the record does not contain a ruling on that objection. The trial court's order granting summary judgment states that "[t]he Court has considered the summary judgment evidence presented," but the final judgment, which was entered after resolution of an attorney's fee issue, mentions only the original petition.

[3] Howard's first amended petition added allegations that "Tesher Corp. was to be the purchaser of the Property," that "the Property would not have been titled in the Defendant's name but for the Defendant's wrongdoing," and that "Tesher Corp. is the equitable owner of the Property."

6

the case would affect a purchaser who took title before such amendment was filed.”); *Mansur & Tebbetts Implement Co. v. Beer*, 19 Tex. Civ. App. 311, 313, 45 S.W. 972, 973 (San Antonio 1898, writ ref’d) (“The suit pending at the time of the transfer of the notes is the one that must serve as a basis for the rule of lis pendens and not matters raised by subsequent amendments or suits.”).

Howard asks us to apply the relation-back doctrine to this situation, arguing that any after-filed pleading containing new legal theories that arise out of the same transaction or occurrence as those asserted in the original pleading should relate back to the date of the original filing, citing *Lovato v. Austin Nursing Centers, Inc.*, 113 S.W.3d 45 (Tex. App.—Austin 2003) (op. on reh’g), *aff’d*, 171 S.W.3d 845 (Tex. 2005). In *Lovato*, this Court held that the relation-back doctrine applied to bar a defense of limitations against a survival action because of section 16.068 of the civil practice and remedies code and equitable principles. *Id.* at 54–55. Section 16.068 “is designed to protect litigants from loss of their claims by a plea of limitations.” *Id.* at 54; *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 1997) (“If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.”).

The relation-back doctrine “originated as an equitable remedy” and “enables the court to arrive at conclusions that will effectuate justice.” *Lovato*, 113 S.W.3d at 55. Extending the relation-back doctrine applicable in a limitations context to a lis pendens situation would not

7

necessarily effectuate justice. To the contrary, inequitable results could occur, especially in light of the draconian nature of a lis pendens. A lis pendens has been called "the functional equivalent of an involuntary lien" because "it acts as a cloud on title." *FDIC v. Walker*, 815 F. Supp. 987, 990 (N.D. Tex. 1993). Such remedies should not be broadly construed. Under Howard's interpretation, any party could hold a piece of real property hostage simply by filing a notice of lis pendens—no one would be able to determine the validity of the lis pendens until after judgment was rendered because pretrial or trial amendments could retroactively validate the notice of lis pendens. We decline to extend the doctrine of relation-back to a lis pendens matter and will consider only Howard's original petition against McLain.

### *Collateral vs. Direct Interest*

In its first issue, Countrywide claims that Howard's notice of lis pendens was invalid because Howard's underlying suit sought only a constructive trust in the real property and as such sought only a collateral interest in the real estate and cannot pass muster under *Flores*. Although the supreme court in *Flores* held that a claim for a "collateral interest" in real property does not authorize the filing of a notice of lis pendens, the court did not hold that the filing of a notice of lis pendens in connection with a lawsuit seeking a constructive trust on real property is per se unauthorized. 915 S.W.2d at 478. Rather, the court held that the interest asserted in *Flores* was collateral because "the plaintiffs seek a constructive trust in the purchased properties only to satisfy the judgment they seek." *Id.*

In actions seeking the imposition of a constructive trust on real property, the question whether an interest sought is collateral or direct is often a close one. Typically, in a conversion suit,

8

the claimant alleges that the proceeds of the converted property were used to purchase real estate and then seeks a constructive trust on that real property. In these cases, the courts have found that imposing a constructive trust on the real estate to satisfy the judgment against the adversary is asserting only a collateral interest in the real property and that a lis pendens is improper. *Id.*; *In re Wolf*, 65 S.W.3d 804, 806 (Tex. App.—Beaumont 2002, orig. proceeding). In contrast, where the constructive trust is sought to restore to the aggrieved party the actual property that was misappropriated, the action is seeking to establish an interest in the property itself, so that a lis pendens is appropriate. *First Nat'l Petroleum Corp. v. Lloyd*, 908 S.W.2d 23, 25 (Tex. App.—Houston [1st Dist.] 1995, no writ).

To determine whether Howard's filing of a notice of lis pendens was proper, we must examine what the nexus is between the underlying suit against McLain and the property in question. Here, the crux of the claim against McLain is that she illegally obtained corporate funds and used those funds to buy real property. This is not a case where the corporation owned certain real property and McLain tricked or deceived the company into transferring the real property to her. In this case, Howard sought a constructive trust on McLain's real property to secure payment of a judgment. Thus, there is an insufficient nexus between the subject matter of the claim and the real property to authorize the filing of a notice of lis pendens. *Flores*, 915 S.W.2d at 478; *In re Wolf*, 65 S.W.3d at 806; *Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding).

Howard argues that *First National Petroleum Corp. v. Lloyd* and *Teve Holdings Ltd. v. Jackson*, 763 S.W.2d 905 (Tex. App.—Houston [1st Dist.] 1988, no writ), support his assertion

9

that his allegations against McLain are sufficient to support the filing of a notice of lis pendens. We disagree. *Jackson* was decided before *Flores*, the controlling supreme court precedent, and *Lloyd* is distinguishable. In *Lloyd*, the intervenor alleged that one of the defendants fraudulently induced it to convey real property and sought "rescission of the parties' agreement and restitution of [the property]." 908 S.W.2d at 24–25. Unlike Howard, the intervenor in *Lloyd* sought a direct interest in the property because the subject matter of its suit concerned the property.

Because Howard alleged that McLain used funds that were illegally obtained from Tesher to purchase real property in Tyler and that Howard should thus be awarded a constructive trust on the property, Howard asserted only a collateral interest in the property, which was insufficient to authorize his filing of a notice of lis pendens. Consequently, the notice of lis pendens did not impart constructive notice of Howard's claim to Countrywide. Accordingly, we sustain Countrywide's first issue, reverse the trial court's summary judgment in favor of Howard, and render judgment that Countrywide's lien on the Tyler property has priority over any rights in the property that Howard may have acquired in his suit against McLain.

### Attorney's Fees

In its second issue, Countrywide urges that the trial court abused its discretion by awarding attorney's fees to Howard, arguing that the award of fees was not equitable or just because the trial court wrongly decided the merits. The Uniform Declaratory Judgments Act provides that a court may award court costs and reasonable and necessary attorney's fees as long as the award is "equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). A court may even award costs and fees to a party who did not prevail. *Barshop v. Medina County Underground Water*

10

*Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet. denied).  But in light of our disposition of this case, the trial court may wish to reconsider its award of attorney's fees to Howard.  We therefore reverse the trial court's ruling regarding attorney's fees and remand the issue to the trial court for further consideration.  *See Barshop*, 925 S.W.2d at 637–38; *Travis*, 68 S.W.3d at 77.

## CONCLUSION

Having concluded that the trial court erred by granting summary judgment in favor of Howard, we reverse the trial court's summary judgment and render judgment that Countrywide's lien on the Tyler property has priority over any rights that Howard has in the property.  Because of this holding, we reverse the trial court's award of attorney's fees and remand that issue for further consideration.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Reversed and Rendered in part; Reversed and Remanded in part

Filed:   June 19, 2007