COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| B & T DISTRIBUTORS, INC., | § | |
|---|---|---|
| | | No. 08-09-00121-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law |
| LORINA WEAVER WHITE, | § | |
| | | of Kendall County, Texas |
| Appellee. | § | |
| | | (TC# 08-237-CCL) |
| | § | |

**O P I N I O N**

This appeal involves rights to a parcel of real property in Kendall County, Texas. Appellant/respondent B&T Distributors, Inc., challenges the trial court's judgment awarding the property to appellee/petitioner Lorina Weaver White, claiming: (1) a *lis pendens* does not bar a properly levied writ of execution; (2) an abstract of judgment is not required to levy a writ of execution; and (3) White's claims were barred by *res judicata* and forum shopping. We affirm.

**FACTS**

Jeff Sill and Lorina Weaver White were divorced in DuPage County, Illinois on November 9, 2001. The decree of divorce included a marital settlement agreement which, among other provisions, awarded Sill real property in Bergheim, Kendall County, Texas.[1] Sill was also liable for various payments to White,[2] and a security provision in the agreement provided:

9.1 The Husband represents and warrants that he is able to make the payments on all of the above debts because of the transfer of the business and all of the assets in the

---

[1] The property is described inconsistently. It is clear, however, that "3.4 acres in Bergheim, Texas" and "North Barcroft Estates, Unit 2, Lot 158, 3.515 acres, Kendall County Texas" are the same property.

[2] Husband later challenged the marital settlement as unconscionable. Both the trial court and appellate court found he had not met his burden of showing unconscionability, and affirmed the marital settlement agreement.

business to him. If, for any reason, he fails to pay any of the above debts, he agrees that his interest in the Boerne, Texas home and the Bergheim, Texas vacant land shall be awarded to the wife as her sole and separate property and clear of any interest of the Husband. The deed shall be signed on these properties, both from the Husband to the Wife and from the Wife to the Husband and shall be held by their respective attorneys transferred either voluntarily or by Court Order from the Husband to the Wife upon verification that all of these debts have been paid and from the Wife to the Husband upon evidence of his failure to pay same.

9.2 This real estate is not in joint names and is not being transferred to either party at the time of the entry of the Judgment, but rather the transfer will take place once the issue of the payment of the debts has been resolved.

Lorina Weaver White filed notices of filing of foreign decree and *lis pendens* regarding the Kendall County property on April 18, 2007. On June 13, 2007, she filed a motion to enforce foreign decree in the County Court at Law of Kendall County, alleging that Sill had failed to meet his obligations as required under the divorce decree. The Court ordered husband to deed over all his rights to the property to wife on March 19, 2008. That deed was recorded on May 6, 2008.

Meanwhile, B&T Distributors, Inc. sued Jeff Sill and Newport Construction Services, Inc. in Allen County, Ohio. On February 10, 2004, B&T obtained judgment against Sill. B&T filed a writ of execution in Kendall County on April 8, 2008, which was returned unserved on May 2, 2008. B&T filed an abstract of judgment in Kendall County on May 7, 2008 (in the official records) and May 13, 2008 (in the judgment records).

White initially filed suit against B&T requesting a temporary restraining order and injunction in Kendall County, which she non-suited. She then filed in neighboring Travis County, and again non-suited that case after the judge refused her a temporary injunction. She filed a third time, again in Kendall County, and ultimately obtained judgment awarding her the property. This appeal follows.

**Lis pendens preserved White's claim to land against later-executed writ of execution**

In its first issue on appeal, B&T contends that the trial court erred in finding that the *lis*

*pendens* barred B&T from levying a writ of execution on the property. We disagree, concluding that the *lis pendens* preserved White's interest in the property.

The relevant timeline regarding the competing claims to the property is as follows:

| | |
|---|---|
| April 18, 2007 | Notice of filing foreign decree filed in Kendall County by Lorina Weaver White |
| April 19, 2007 | Notice of lis pendens filed in Kendall County by Lorina Weaver White |
| April 8, 2008 | Writ of Execution served on Kendall County Constable by B&T |
| May 2, 2008 | Property levied upon and seized by Constable |
| May 6, 2008 | Deed from Jeff Sill to Lorina Weaver White filed in Kendall County |
| May 7, 2008 | Abstract of judgment filed by B&T in Kendall County |

In his findings of fact and conclusions of law, the trial court found that "the only relevant document filed in the Real Property Records of Kendall County, Texas before the deed from Jeff Sill to Lorina Weaver White on May 5, 2008 was the Notice of Lis Pendens filed by Lorina Weaver White on April 12, 2007" and "[t]he first document filed by Defendant [B&T] in the Real Property Records of Kendall County, Texas was the abstract of judgment . . . ." Based upon this, the trial court concluded that:

> B&T's claim would be as to the interest which Jeff Sill had, if any, to the real property at the conclusion of White-Sill lawsuit. Lorina Weaver White filed her lis pendens on April 12, 2007. The filing gave notice to the public that there was pending litigation where she sought title to the subject real property pursuant to the terms of her November 9, 2001 Divorce Decree from Jeff Sill. Plaintiff's lis pendens was filed prior to B&T attempting, in any manner, to enforce its foreign judgment against Jeff Sill in the State of Texas.

B&T argues that this conclusion is incorrect, as a *lis pendens* operates only as notice to potential voluntary purchasers of a conflicting claim. B&T further argues that a *lis pendens* does not create a lien, but is simply a warning to potential purchasers. Thus, B&T contends that the first lien to attach to the property was created by the constable's May 2, 2008 levy pursuant to B&T's writ of execution.

A *lis pendens* is a notice, recorded in the chain of title to real property warning all persons that certain property is the subject matter of litigation. The purpose of a notice of *lis pendens* is to put those interested in a particular tract of land on inquiry about the facts and issues involved in the suit and to put prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation. *Countrywide Home Loans, Inc. v. Howard,* 240 S.W.3d 1, 4 (Tex. App. – Austin 2007, pet. denied). Although *Howard* speaks of "prospective buyers," we note the *lis pendens* statute contains no such limitation:

> A recorded lis pendens is *notice to the world* of its contents. The notice is effective from the time it is filed for record, regardless of whether service has been made on the parties to the proceeding. TEX. PROP. CODE ANN. § 13.004(a) (Vernon 2004) (emphasis added).

In *Long Beach Mortgage Co. v. Evans,* 284 S.W.3d 406, 414-15 (Tex. App. – Dallas 2009, pet. denied), the Dallas Court of Appeals considered a situation similar to that before us here. There, a Dallas residence was purchased with money wrongfully acquired from TLC America, Inc. The residence was also used as collateral for a home equity loan funded by Long Beach Mortgage, upon which the owners later defaulted. The home became the subject of competing claims by Evans, TLC's receiver in California SEC litigation, and Long Beach Mortgage. *Id.* at 409. Upon discovering that TLC's funds had been used as purchase money, Evans filed a *lis pendens* on the property on July 23, 2002; the California court imposed a constructive trust on the residence in

December 2002. *Id.* Long Beach Mortgage had recorded its deed of trust on August 2, 2002. Evans filed suit in Dallas to resolve the conflicting claims.

The Dallas Court of Appeals found that because Evans filed the *lis pendens* prior to the date Long Beach executed and filed its deed of trust, Long Beach's lien claim was, as a matter of law, subordinate to Evans's *lis pendens*. *Id.* at 415. The Court noted that, under TEX. PROP. CODE ANN. § 12.007,

> "[D]uring the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending." The lis pendens statute gives litigants a method to constructively notify anyone taking an interest in real property that a claim is being litigated against the property. A recorded lis pendens is notice to the world of its contents . . . . *Id.* at 413-14 (original emphasis and internal citations omitted).

The Dallas court appeared completely untroubled by the parties' status as competing judgment creditors. It simply held that, because Evans's *lis pendens* was recorded first, Long Beach's lien claim was subordinate to Evans's rights under the constructive trust. *Id.* at 414-15. Similarly, we conclude that B&T's interest in the Kendall County property was subordinate to the outcome of White's litigation because her *lis pendens* was filed before B&T took any action to enforce its judgment. *Howard,* 240 S.W.3d at 4. Appellant B&T's first issue on appeal is overruled.

**Levy and abstract of judgment did not create superior rights**

In its second issue on appeal, B&T argues that the trial court erred in concluding that levy pursuant to the writ of execution was insufficient to take control of the property absent the filing of the abstract of judgment. This is important, B&T argues, because the levy occurred prior to the filing of White's deed, and therefore its lien should be superior. We agree that a valid levy of execution creates a lien on the debtor's property in favor of the judgment creditor. *T.E.I.A. v.*

*Engelke,* 790 S.W.2d 93, 95 (Tex. App. – Houston [1st Dist.] 1990, orig. proc.). We disagree, however, that this has any practical effect on the litigation here. For the reasons discussed above, we conclude that the *lis pendens* was sufficient to preserve White's claim to the property and was filed first in time in the deed records. As White was entitled to the property in its entirety, there was nothing left to satisfy B&T's judgment via its levy of execution. Issue Two is overruled.

### Res judicata and forum shopping

In its third issue, B&T argues that the trial court erred in refusing to dismiss White's lawsuit based on res judicata and forum shopping. As iterated above, White filed suit against B&T first in Kendall County. This she non-suited. She then filed in neighboring Travis County, and again non-suited her case. She filed a third suit, again in Kendall County, and ultimately obtained the judgment which is on appeal now. B&T first argues that the Travis county suit, wherein she was denied a temporary injunction, constitutes *res judicata*. It then argues that three lawsuits in two venues constitutes blatant forum shopping which warranted dismissal as well.

*Res judicata* requires the convergence of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identical parties or their successors in privity; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex. 1996). Here, it appears there was never any ruling in the first Kendall County suit, there was a denial of temporary injunction (an interlocutory order) in the Travis County suit, and thus the only final ruling came in the suit presently before this Court. *Res judicata* does not apply here. That portion of the third issue is overruled.

With regard to the forum shopping argument, we conclude that Appellant has failed to preserve that issue for our review. A perusal of the record reveals no motion or argument below

that raises that issue, nor is there any order by the trial court in that regard. In order to preserve a complaint for appellate review, it must have been presented to the trial court for ruling. TEX. R. APP. P. 33.1; *In re A.D.P.,* 281 S.W.3d 541, 547 (Tex. App. – El Paso 2008, no pet.). That portion of the third issue is overruled.

## CONCLUSION

For these reasons, we find no error in the trial court's judgment. It is affirmed.


SUSAN LARSEN, Justice (former)

August 31, 2010

Before Chew, C.J., Rivera, J., and Larsen, J.
Larsen, J. (sitting by assignment)