Opinion issued April 14, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00804-CV

———————————

In re Jay H. Cohen, Relator



 



 

Original Proceeding on Petition

for Writ of Mandamus



 



 

O P I N I O N

In this
original proceeding, Relator Jay H. Cohen seeks relief from two trial court
orders[1] expunging lis pendens on three
properties.  We conditionally grant his
petition for writ of mandamus.

Background

The underlying suit involves claims
related to several parcels of real property in Houston.  Because a complete recitation of the facts
surrounding the underlying dispute is not necessary for our disposition, we limit
our discussion to only the facts relevant to this original proceeding.  The notices of lis pendens at issue here
relate to the following three properties:

(1)            
7.7 acre tract at Alabama and Dunlavy that is the subject of a June 24,
2010 “Supplemental Notice of Lis Pendens” (“Alabama/Dunlavy Property”);

(2)            
1.56 acre tract on East Bissonnet that is the subject of a July 27, 2010
“Second Supplemental Notice of Lis Pendens” (“Bissonnet Property”); and 

(3)            
2.44 acre tract on West Newcastle that is also the subject of the July
27, 2010 “Second Supplemental Notice of Lis Pendens” (“Newcastle Property”).

In the past, Cohen has owned each
of these properties.  Through a series of
transactions over several years, he transferred them into different
partnerships.  In the underlying suit, he
claims that these properties have since been wrongfully and fraudulently
encumbered by debt and transferred to others. 


On April 10, 2010, acting in his
capacity as trustee of trusts that are limited partners in partnerships that now
hold or have held the properties, Cohen sued several defendants derivatively on
behalf of those partnerships.  Between
May 5, 2010 and August 27, 2010, he amended his petition four times to add
additional defendants and claims.  During
the course of this litigation, he also filed numerous notices of lis pendens—including the one filed June 24, 2010 related
to the Dulavey/Alabama Property and the one filed July 27, 2010 related to the
Bissonnet Property and the Newcastle Property. 


1.     Alabama/Dunlavy Property

On July 23, 2010, Defendants
Commerce Equities II, LLC, Flat Stone Development, Inc., Flat Stone II of
Texas, Inc., and Alabama & Dunlavy, Ltd. (“Alabama/Dunlavy Defendants”)
filed a “Motion to Cancel and Expunge Notices of Lis Pendens, and Request for
Costs and Fees.”  This filing challenged
the lis pendens filed on several properties, with only the Alabama/Dunlavy
Property being relevant here.

The Alabama/Dunlavy Property was
the subject of a April 6, 2010 “Notice of Lis Pendens,” a May 17, 2010 “Amended
Notice of Lis Pendens,” a June 17, 2010 “Release of Notice of Lis Pendens”
(releasing the April 6, 2010 Lis Pendens), a June 11, 2010 Release of Amended
Notice of Lis Pendens (releasing May 17, 2010 Amended Notice of Lis Pendens”),
and a June 24, 2010 “Supplemental Notice of Lis Pendens.”  The Alabama/Dunlavy Defendants’ motion to
expunge challenged the notices of lis pendens as void because, these defendants
alleged, Cohen’s claims related to the Alabama/Dunlavy Property are collateral,
rather than direct, and thus are not “seeking title to, an interest in, or
encumbrance against the real property” sufficient to support lis pendens.  Rather, they asserted, Cohen improperly seeks
to impose a lis pendens to support “what amounts to a judgment lien.”  Accordingly, they argued, Cohen “cannot make
a showing . . . that his pleading contains real property claims.”     

2.     Bissonnet and Newcastle Properties    

On August 24, 2010, Defendants East
Bissonnet, Ltd. and West Newcastle, Ltd. (“Bissonnet/Newcastle Defendants”) filed
a joinder of the Alabama/Dunlavy Defendants’ motion to expunge.  This motion challenged the lis pendens on the
Bissonnet Property and on the Newcastle Property.   

 The Bissonnet Property and Newcastle Property
were the subject of a July 27, 2010 “Second Supplemental Notice of Lis Pendens.”  The Bissonnet/Newcastle Defendants argued
both that Cohen’s pleadings did not state a claim for an interest in real
property and that Cohen cannot establish by a preponderance of the evidence the
probable validity of any real property claim. 
This is because, they contend, “[b]ased upon the incontrovertible facts
pertaining to Movants’ respective ownership of the subject properties, Cohen
had no legal right to place Notices of Lis Pendens on Movants’ respective real
property.”  

On September 3, 2010, Defendants
Matthew G. Dilick and the Bissonnet/Newcastle Defendants filed “The Dilick
Defendants’ Emergency Motion for Immediate, Expedited Expungement and
Cancellation of Lis Pendens.”  They
asserted that the Bissonnet and Newcastle Properties were facing “impending
foreclosures” and that the Second Supplemental Notice of Lis Pendens “prohibits
execution of potential contracts that could keep the properties out of
foreclosure and profit the Partnerships.” 
They argued that Cohen’s filing notices of lis pendens was wrongful, and
that the lis pendens on the Bissonnet and Newcastle Properties jeopardized
Defendant Dilick’s credit because he personally guaranteed notes that will be
foreclosed.  

3.     The trial court orders

On September 1, 2010, the trial
court signed an “ORDER ON MOTION TO CANCEL AND EXPUNGE NOTICES OF LIS PENDENS,
AND REQUEST FOR COSTS AND FEES.” That order found that the lis pendens filed on
three properties, including the Alabama/Dunlavy Property at issue in this
proceeding, void.  The order states: 

Plaintiff’s allegations in
his First Amended Petition do not support any claim that Plaintiff possessed a
direct interest in [the Alabama/Dunlavy Property] at the time the notices of
lis pendens were filed—and such failure is enough to merit the
expunging of lis pendens.[2]    

On September 7, 2010, the trial
court signed an order granting Dilick’s and the Bissonnet/Newcastle Defendants’
motion for expedited expungement of the Second Supplemental Notice of Lis
Pendens relating to the Bissonnet Property and the Newcastle Property.  Unlike the September 1, 2010 order expunging
the notice of lis pendens on the Alabama/Dunlavy Property, this September 7,
2010 order did not specify which of Cohen’s pleadings were relied upon by the
court, and did not state whether the court found Cohen’s pleading or Cohen’s
evidence deficient.       

In response to Cohen’s motion to
reconsider, the court signed two further orders refusing reconsideration but clarifying
that both its September 1, 2010 and September 7, 2010 orders were made with
reference to the Fourth Amended Petition—the live pleading when the motions to expunge were heard—rather than the First Amended Petition that was
referenced in the court’s September 1, 2010 order.  Both orders also state that, in entering both
the September 1, 2010 and September 7, 2010 orders, the court “did not consider
evidence or make a determination of the sufficiency of the evidence.”  

4.     This proceeding

Cohen brought this original
proceeding challenging the orders expunging the lis pendens on the
Alabama/Dunlavy, Bissonnet, and Newcastle Properties. He also filed a motion to
stay the trial court’s expungment orders, which we granted on September 30,
2010.      

Lis Pendens

“[D]uring the pendency of an action
involving title to real property, the establishment of an interest in real
property, or the enforcement of an encumbrance against real property,” a party
seeking affirmative relief may file a lis pendens in the real property records
of the county where the property is located. 
Tex. Prop. Code Ann. § 12.007(a) (Vernon Supp. 2010).  The notice must contain certain information,
including the style and cause number of the proceedings, the court where it is
pending, the names of the parties, identification of the kind of proceedings,
and a description of the property affected. 
Tex. Prop. Code Ann. 
§ 12.007(b).  A properly filed lis pendens is not itself a
lien, but rather it operates as constructive notice “to the world of its
contents.”  See Tex. Prop. Code Ann.

§ 13.004(a) (Vernon 2003); see also B&T Distribs., Inc. v. White,
325 S.W.3d 786, 789 (Tex. App.—El Paso 2010, no pet.) (“The purpose of a notice
of lis pendens is to put those
interested in a particular tract of land on inquiry about the facts and the
issues involved in the suit and to put prospective buyers on notice that they
acquire any interest subject to the outcome of the pending litigation.”). 

To challenge notices of lis pendens that, as here, were filed after
September 1, 2009, a party may file an application to have a lis pendens expunged.  Tex.
Prop. Code Ann. § 12.0071 (Vernon Supp. 2010).  The court must grant the motion if (1) “the
pleading on which the notice is based does not contain a real property claim,”
or (2) “the claimant fails to establish by a preponderance of the evidence the
probable validity of the real property claim.” 
Tex. Prop. Code Ann. §
12.0071(c).  Prior to section 12.0071’s
enactment in 2009, a party could similarly obtain cancelation of a lis pendens
by establishing that the suit upon which the lis pendens is based involved a
collateral, rather than direct, interest in real property.  E.g.,
In re Collins, 172 S.W.3d 287, 293
(Tex. App.—Fort Worth 2005, orig. proceeding). 
This is because “the property against which the lis pendens is filed
must be the subject matter of the underlying lawsuit.”  Id.
If the suit seeks a property interest only to secure the recovery of damages or
other relief that the plaintiff may be awarded, it is not “an action involving:
(1) title to real property, (2) the establishment of an interest in real
property, or (3) the enforcement of an encumbrance against real property” as
required by section 12.007 to render a notice of lis pendens proper.  Flores
v. Haberman, 915 S.W.2d 477, 478 (Tex. 1995) (orig. proceeding).  

Before section 12.0071 was enacted, there was a split in authority about
whether the classification of a claim as direct or collateral should be made
solely by reference to the pleadings or by examining the evidence.  E.g., Collins, 172 S.W.3d at 293-94
(comparing pleadings-only approach of this Court and Austin with the evidence-inclusive
approach of Beaumont and Tyler, while noting Dallas has taken both approaches).  The new section 12.0071 resolves that split,
expressly providing avenues for both by allowing expungement based on the (1)
failure to adequate plead “a real property claim,” or (2) failure to
demonstrate by a preponderance of the evidence “the probable validity of the
real property claim.”  Tex. Prop. Code Ann. § 12.0071(c).

Because the trial court specifically limited its consideration to the
pleadings, our review is limited to whether “the pleading on which the notice
is based does not contain a real property claim” under section 12.0071(c)(1).  There are no appellate cases yet reviewing
the expungement of a lis pendens under section 12.0071.  We conclude, however, that prior cases
determining whether a claim is one “involving title to real property, the
establishment of an interest in real property, or the enforcement of an
encumbrance against real property” with reference only to the pleading under
section 12.007 are instructive in assessing what qualifies as adequately
pleading “a real property claim” under the new section 12.0071.    

Did Cohen
sufficiently plead real property claims?

The parties disagree about (1)
which of Cohen’s pleading are relevant, and (2) whether Cohen adequately
pleaded real property claims.

1.    
Pleadings to be Considered

The trial court’s conclusion that
Cohen failed to sufficiently plead a real property claim was made with
reference to his Fourth Amended Petition—his live petition at the time the court expunged the notices of lis pendens.
 Cohen likewise focuses on the Fourth
Amended Petition in arguing that he adequately pleaded real property claims.

Dilick, the Alabama/Dunlavy
Defendants and the Bissonnet/Newcastle Defendants argue that the relevant
pleading is not the Fourth Amended Petition, but rather the First and Second
Amended Petitions—the live
pleadings when the notices of lis pendens on the relevant properties were filed.[3]  They note section 12.0071(c)’s provision
permitting a notice of lis pendens “during
the pendency of an action involving title to real property . . .” and
section 12.007(a)’s providing for expungement if the court determines “the pleading on which the notice is based
does not contain a real property claim.” 
This statutory language, they argue, means that “in analyzing the
propriety of a notice of lis pendens the trial court must consider the pleading
that was live at the time the plaintiff
filed the notice of lis pendens.”  

In support of their position, these
defendants cite In re Kroupa-Williams,
a case in which the court looked the plaintiff’s live pleading at the time the lis
pendens was filed to determine whether it sufficiently pleaded a real property
interest.  See No. 05-05-00375-CV, 2005 WL 1367950, at *3 (Tex. App.—Dallas
June 10, 2005, orig. proceeding) (mem. op.). 
In contrast, Cohen cites Countrywide
Home Loans, Inc. v. Howard, for the proposition that “the validity of a
filing of a notice of lis pendens is judged by the pleadings on file at the
time the transaction with respect to the property occurred.”  240 S.W.3d 1, 5 (Tex. App.—Austin 2007, pet.
denied).[4]  Cohen further contends that Kroupa-Williams is consistent with Countrywide because the plaintiff’s live
petition at the time the notice of lis pendens was filed in the Kroupa-Williams case was also the live petition
at the time of the relevant transaction—the sale of the land.  See Kroupa-Williams, 2005 WL 1367950, at
*2.

For the reasons articulated below,
we conclude that even accepting the argument of some real parties in interests
that the First and Second Amended Petitions, rather than the Fourth Amended
Petition, are the relevant pleadings, Cohen sufficiently pleaded a real property
claim.  Thus, we need not decide here
whether the relevant pleading is the petition on file when the notice of lis
pendens is filed or the petition on file when the relevant transaction occurs.    

2.    
Alabama/Dunlavy
Property

 

The Alabama/Dunlavy Property is the
subject of the June 24, 2010 “Supplemental Notice of Lis Pendens.”  Relevant to the Alabama/Dunlavy Property,
Cohen’s First Amended Petition, filed May 5, 2010 and the live pleading when
the Supplemental Notice of Lis Pendens was filed, contains the following
allegations:

2.       Plaintiff, Jay H. Cohen, is the settler, a co-trustee and a
beneficiary of the JHC Trusts I and II (the “Trusts”), and brings this suit
solely on behalf of and in his capacity as trustee of the Trusts, which are
limited partners in the Partnerships described . . . including derivatively on behalf
of the Partnerships.  The trust[s] have
not attempted to secure initiation of this action by the purported general
partners of the Partnerships because the purported general partners are
Defendants in the case.   

. . . .

8.       Defendant, Commerce Equities II, LLC is the purported general
partner of a Texas limited partnership known as Alabama & Dunlavy, Ltd. . .
. . [Defendant] Dilick owns and/or controls Commerce Equities II, [and other
entities].  They are his alter egos. . .
. The Trusts are 80% limited partners in the Partnerships.  Dilick personally committed the acts and
omission complained of herein, or caused the Dilick entities he owns and/or
controls to commit them . . . . 

9.       This is a suit to remove Dilick and the Dilick entities as
purported general partners of the Partnerships, for an accounting, for
injunctive relief, for actual and exemplary damages, and to set aside liens on or transfers of
properties owned by the Partnerships.

. . . .

16.     Until on or about February 26, 2010, Alabama & Dunlavy owned
legal title to a tract of land of approximately 7.6877 acres located at Alabama
and Dunlavy Streets in Houston, Harris County, Texas.  Dilick collateralized over $13 million in
loans with liens on this property. . . . [A] substantial amount of the loans
were used by Dilick for his own personal benefit and . . ., therefore, the loans, were, in whole or in part,
unauthorized, ultra vires, and fraudulent transfers.

17.     On or about February 26, 2010, Dilick purportedly sold the
7.6877 acre tract to Defendant, Abercrombie, for approximately $13.5
million.  Shortly prior to the purported
sale of the property to Abercrombie, Dilick had filed pleadings in cases
pending in the Harris County District Court in which he alleged that the value
of the property was in excess of $20 million, based upon recent
appraisals.  Abercrombie is owned or
controlled by close associates of Dilick. 
The sale was not an arms [sic] length transaction.  Dilick did not disclose and fraudulently
concealed this transaction from Plaintiff. . . .

18.     The entire transaction involving the purported sale of the
Alabama & Dunlavy property was part of a conspiracy and scheme of Dilick to
use the property as collateral for loans that were substantially for his own
personal benefit and then once the loans would no longer be renewed,
purportedly to sell the property to an entity controlled by close associates
thereby gaining ultimate control of the property.  This plan and scheme constitutes, among other
things, self dealing by a fiduciary and misapplication of fiduciary property
under Texas Penal Code, Section 21, 45, and is, together with all transactions
purportedly conducted as part of this scheme and the sales and liens
purportedly made or granted pursuant to those transactions, void.  By
this suit, Plaintiff seeks judgment setting aside the purported transfer of the
Alabama & Dunlavy property and cancelling the purported lien thereon.
 

(emphasis added).

3.    
The Bissonnet and Newcastle Properties

The Bissonnet Property and the
Newcastle Property are the subject of the July 27, 2010 “Second Supplemental
Notice of Lis Pendens.”  Relevant to the Bissonnet
and Newcastle Properties, Cohen’s Second Amended Petition, filed July 26, 2010
and the live pleading when the Second Supplemental Notice of Lis Pendens was
filed, contains the following allegations:

2.       Plaintiff, Jay H. Cohen is the settler, a co-trustee and
beneficiary of the JHC Trusts I and II (the “Trusts”), and brings this suit
solely on behalf of and in his capacity as trustee of the Trusts, which are
limited partners in the Partnerships described below, and derivatively on
behalf of the Partnerships. . . .  On
March 30, 2010, . . . [i]n the instrument appointing Cohen as co-trustee,
Howard Hebert, the only other co-trustee of the Trusts, delegated to Cohen the
authority to act on behalf of the Trusts, expressly providing that Cohen “shall
have and may exercise any and all powers of the Trustee under the agreement
creating the Trust.”  Plaintiff has not
attempted to secure initiation of this action by the purported general partners
of the Partnerships because the purported general partners are Defendants in
the case.

. . . .

7.       Defendant . . . Flat Stone Development, Inc, is the purported
general partner of a Texas limited partnership known as Flat Stone Ltd.  Defendant, Flat Stone II of Texas, Inc., is
the purported general partner of a Texas limited partnership known as Flat
Stone II, Ltd.  Dilick owns and/or
controls . . . Flat Stone Development, Inc., and Flat Stone II of Texas,
Inc.  They are his alter egos.  Hereinafter . . . Flat Stone Development,
Inc. and Flat Stone II of Texas, Inc. will be referred to collectively as the
“Dilick entities” and . . . Flat Stone, Ltd., and Flat Stone II, Ltd. will be
referred to collectively as the “Partnerships.” 
The Trusts are 80% limited partners in the Partnerships.  Dilick personally committed the acts and
omissions complained of herein, or caused the Dilick entities he owns and/or
controls to commit them, including the acts and omissions of the Dilick
entities acting in their capacity as purported general partners of the
Partnerships.     

. . . .

9.       Cohen . . . in or about 2002 and 2003, contributed to the
Partnerships five valuable commercial properties in Houston (referred to herein
as “the properties” . . . ) that he individually (or the Trusts) owned. . . .
The goal was to have Dilick, who purportedly had development experience,
develop the properties so as to make them income producing. . . . 

  . . .
.

10.     . . . [Dilick] . . . along with Abercrombie, pledge[d] the
properties as collateral for over $30 million in loans.  He also purported to convey legal title to
three of the properties to either entities wholly controlled by himself (The Bissonnet/Newcastle
Defendants), or to an entity controlled by his friend, Abercrombie, (TAFI). . .
. 

. . . .

 12.    The purpose of this suit is to rescind,
cancel and set aside the transfers and conveyances of interests in the
properties made by Dilick and the Dilick entities as purported general partners
of the Partnerships, to restore title to the properties in the Partnerships,
to disgorge and terminate any interest of Dilick or the Dilick entities in the
Partnerships, to terminate and dissolve the Partnerships, to secure an
accounting, to secure temporary injunctive relief to maintain the status quo
during the pendency of this suit, to recover actual and exemplary damages and
attorney’s fees, and to recover and/or
impose constructive trusts on fraudulently transferred properties and
proceeds thereof, including proceeds of fraudulently transferred interest in
the properties.

13.     Until the formation of Flat Stone II, Cohen, individually, was
the 100% owner of legal title to a 1.56 acre tract of land located at 4400 Bissonnet
Road, [and] a 2.43 acre tract located at the Northeast corner of Newcastle
Street and Bissonnet Road containing six residential lots and approximately 1.5
acres of commercial properties . . . . 

14.     In 2006, Dilick, without the knowledge or consent of Plaintiff,
borrowed $4,000,000 for Regions Bank for his personal use, and fraudulently
executed a deed of trust pledging Flat Stone II’s interest in the 1.56 and 2.43
acre tracts to Regions Bank . . . . 

. . . .

18.     . . . The lien on the
1.56 and 2.43 acre tracts was ultra vires, unauthorized and a fraudulent
transfer, and should be set aside and cancelled.  

19.     In 2009, Dilick executed deeds on behalf of Flat Stone II, purportedly
conveying title to these properties to East Bissonnet Ltd. (the 1.56 acre
tract). And West Newcastle, Ltd. (the 2.43 acre tract).  These conveyances were also without the knowledge
or consent of Plaintiff.  Dilick did not
disclose and fraudulently concealed these transactions from Plaintiff.  No consideration was paid to Flat Stone II
for the transfers.

. . . .

21.     . . . The transfers of
the 1.56 and 2.43 acre tracts to the Bissonnet/Newcastle Defendants were ultra
virus, unauthorized and fraudulent, and should be set aside and cancelled.

. . . .

31.     Transactions
purportedly conducted as part of this scheme, including the liens and transfers
of title purportedly made or granted pursuant to those transactions, are
unauthorized, ultra vires, fraudulent transfers and/or void.  Plaintiff is entitled to judgment rescinding,
cancelling and setting aside the transfers of title to the 1.56 acre and 2.43
acre tracts to the Bissonnet/Newcastle Defendant . . . . Plaintiff is also
entitled to judgment canceling and rescinding the liens on the 1.56 [and] 2.43
. . . acre tracts and the properties securing the notes . . . .
Plaintiff is also entitled to judgment for recovery of the proceeds of all
loans against all Partnership properties, [and] 
imposition of a constructive trust on all property acquired with all
loan proceeds. . . .   

WHEREFORE, Plaintiff prays
for relief against Defendants as follows:

. . . .

          (C)     Entry
of judgment canceling transfers of title to and liens against Partnership
properties, restoring title to the Partnership properties in the Partnerships,
recovering proceeds of loans and fraudulent transfers and imposing constructive
trusts on properties acquired with proceeds of purported sales, loans or other
disposition of interests in fraudulently transferred properties. 

(emphasis added).

4.    
Analysis

Cohen argues that because these
petitions specifically seek recovery of the real property at issue, and because
he seeks to alternatively impose constructive trusts on fraudulently
transferred properties, he has adequately pleaded a real property claim.   

In response, real-parties-in-interest
Dilick, the Alabama/Dunlavy Defendants and the Bissonnet/Newcastle Defendants
argue that the trial court’s expungement orders related to the Albama/Dunlavy
Property, the Bissonnet Property and the Newcastle Property were each properly
entered because Cohen, as a mere “co-trustee” of the trusts that are limited
partners in the partnerships that previously owned the properties at issue, “is
not entitled to bring derivative claims on behalf of those partnerships.”  They further contend that, because returning
title to the Bissonett and Newcastle Properties to the partnership that
formerly owned them would not technically alter that partnership’s ownership
interest or control over the properties, “Cohen’s prayer for return of title
does not support a real property claim” as to those two properties.[5]

Texas Abercrombie Family Interests,
L.L.C., (“TAFI”) the current owner of the Alabama/Dunlavy Property, also filed
a response in opposition to Cohen’s petition for writ of mandamus.  TAFI argues that the “Alabama & Dunlavy
property is different from the other properties covered by the various
notices.”  Specifically, TAFI contends
that it (1) was a bona fide purchaser for value of the property from Alabama
& Dunlavy, Ltd. before the underlying suit was filed, (2) borrowed purchase
money before the underlying lawsuit was filed, (3) entered a long-term lease on
the property before the underlying lawsuit was filed, and (4) with the consent
of Cohen, closed this long-term lease after the underlying lawsuit was filed,
and (5) with the consent of Cohen, closed its permanent financing on the
purchase of the property after the underlying lawsuit was filed.  Thus, according to TAFI, “rescission or cancellation
of the pre-lawsuit sale and purchase of this
property is not possible, because restoration of the Property and the parties
to the status quo ante is not possible,” so the trial court’s expunging the lis
pendens on this property was proper. 
Recognizing that the trial court’s ruling was made on the pleadings,
TAFI alternatively requests—if the
Court concludes that Cohen has properly alleged a direct real property claim—that we remand “to the trial court for an
evidentiary hearing concerning whether Cohen can ‘establish by a preponderance of
the evidence the probable validity of the property claim.”

SE Texas Note Acquisitions 2010-11,
LLC (“Texas Note”)—a party that
owns the Regions Bank promissory note to Matthew Dilick secured by the
Bissonnet Property and Newcastle Property—also filed a brief in opposition to Cohen’s petition for writ of
mandamus.  In addition to adopting the
positions of Dilick, the Alabama/Dunlavy Defendants and the Bissonnet/Newcastle
Defendants, Texas Note argues that Cohen fails to state a claim against Regions
Bank and Texas Note, much less a “real property claim.”  Texas Note asserts that because Flat Stone
II, Ltd., the entity Cohen purports to derivatively represent, has no claim for
fraudulent transfer, Cohen’s claim for fraudulent transfer is foreclosed.  Texas Note further argues that Cohen has
asserted no wrongdoing by Regions Bank, and thus the trial court’s expunging
the lis pendens affecting the Bissonnet Property and the Newcastle Property was
correct.  Finally, Texas Note argues that
Cohen has waived his right to support his notice of lis pendens by
alternatively “establish[ing] by a preponderance of the evidence the probably
[sic] validity of the real property claim,” but requests this Court remand for
an evidentiary hearing if the Court concludes that Cohen has pleaded a real
property claim related to the Bissonnet Property and the Newcastle
Property.     

In evaluating whether a plaintiff
has sufficiently pleaded a real property claim for purposes of supporting a
notice of lis pendens, this Court has consistently held that a pleading
requesting the restoration of a prior ownership interest in a particularly
identified property—through
actual title or a constructive trust—is sufficient.  E.g., First Nat’l Petroleum Corp. v. Lloyd, 908 S.W.2d 23, 25 (Tex.
App.—Houston [1st Dist.] 1995, orig. proceeding) (reversing trial court order
cancelling lis pendens because petition alleged “that a constructive trust in
favor of [plaintiffs] should be imposed on the property covered by the notice
of lis pendens and asked that title to the property be” returned to
plaintiffs); Hughes v. Houston Nw. Med.
Ctr., 647 S.W.2d 5, 7 (Tex. App.—Houston [1st Dist.] 1982, writ dism’d)
(reversing trial court order cancelling lis pendens because as “shown by the
allegations in the plaintiffs’ petition, the true nature of their action is to
set aside certain contracts affecting the title to land . . . and to impose a
constructive trust upon the title to said property, . . . [which] involves a
claim of an interest or right in the land”); see also In re Mousa, No. 01-04-00485-CV, 2004 WL 2823172, at *2
(Tex. App.—Houston [1st Dist.]  Dec. 9, 2004, orig. proceeding) (mem. op.)
(“A party’s assertion that they are entitled to recover the property at issue
in the lawsuit sufficiently states a claim coming within the provisions of the
lis pendens statute.”).  This Court has
also upheld the validity of a notice of lis pendens filed on specifically
identified property alleged to have been purchased with “the fruits” of the
defendant’s fraud on the plaintiff.  Teve Holdings, Ltd. v. Jackson, 763
S.W.2d 905, 908 (Tex. App.—Houston [1st Dist.] 1988, no writ) (holding lis
pendens proper, when “the pleadings not only sought a constructive trust but
also plaintiffs prayed that they be awarded an interest in specifically
described property, to prevent the unjust enrichment of the defendant”).

In contrast, in cases in which the
plaintiff requests title to the property, or a constructive trust, only to
satisfy a money judgment against the defendant, courts have found cancellation
of lis pendens proper because those claims do not involve a sufficient direct
interest in real property.  See, e.g., Flores, 915 S.W.2d at 478
(holding notice of lis pendens was improper because “plaintiffs seek a
constructive trust in the purchased properties only to satisfy the judgment
they seek against” the defendant, which “is no more than a collateral interest
in the property”); In re Watts, No.
01-02-01247-CV, 2003 WL 204879, at *1 (Tex. App.—Houston [1st Dist.] Jan. 30,
2003, orig. proceeding [mand. denied]) (mem. op.) (holding that “notice of lis
pendens was improperly filed” because plaintiff sought constructive trust in
real property only to satisfy a money judgment against the defendant and distinguishing
facts from cases in which plaintiff claims an interest in property); Moss v. Tennant, 722 S.W.2d 762, 763
(Tex. App.—Houston [14th Dist.] 1986, orig. proceeding) (holding that
plaintiff’s “pleading that a lien be imposed against the . . . property is
essentially a prayer for a judgment lien, affects the property only
collaterally, and does not come within the provisions of § 12.007” because
plaintiff “does not seek recovery to the title to relator’s property nor to
establish an interest in the home except as security for the recovery of any
damages he may be awarded” against defendant).

Cohen does not seek a judgment
lien, but instead requests that real property liens and title transfers be set
aside, and that a constructive trust be placed on properties he alleges were
fraudulently transferred.  These are real
property claims sufficient to support a notice of lis pendens.  First
Nat’l Petroleum Corp., 908 S.W.2d at 25; Hughes, 647 S.W.2d at 7.  The
trial court thus erred by expunging Cohen’s lis pendens on the Alabama/Dunlavy,
Bissonnet, and Newcastle Properties.  

We do not opine on the merits of
the real-parties-in-interests’ numerous arguments here as they do not go to the
sufficiency of Cohen’s pleadings.  E.g., Hughes, 647 S.W.2d at 8 (reversing order cancelling lis pendens
because “record shows that the trial court’s order was based entirely upon a
legal conclusion that the plaintiffs were not entitled, as corporation
shareholders, to file or maintain a lis pendens notice against the property
covered by the corporation’s executory contract of sale” rather than by
reference only to the pleadings when plaintiffs alleged they were acting in
their “derivative capacity”).  Real parties
in interests’ arguments are instead relevant to (1) whether Cohen can prevail
on his real property claims, and (2) what particular defendants’ property
interest would be burdened by any property interest of Cohen’s established in
the underlying litigation.  These issues
have yet to be addressed by the trial court, rendering review of them here
premature.  

Conclusion

We hold the trial court erred in
cancelling Cohen’s notices of lis pendens based on the pleadings alone.  “Mandamus has been recognized as the
appropriate remedy when issues have arisen concerning the issuance of notices
of lis pendens.”  First Nat’l Petroleum Corp., 908 S.W.2d at 24-25; Flores, 915 S.W.2d at 478.  We thus conditionally grant Cohen’s petition for
writ of mandamus and direct the trial court to vacate its orders expunging the
lis pendens based on the pleadings.  This
directive does not bar further evidentiary proceedings on this matter under
section 12.0071(c) of the Texas Property Code, nor does it address an order
dissolving the notices of lis pendens should Cohen fail to carry his
evidentiary burden.  

 

   

 

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 











[1]
          The underlying case is Cohen v. Dilick, No. 2010-20973, in the
234th District Court of Harris County, the Honorable Reece Rondon, presiding.





[2]
          The court crossed out the following language
in the order: “Plaintiff failed to establish by a preponderance of the evidence
the probable validity of a real property claim in his First Amended Petition.” 





[3]
          Real party in interest Texas
Abercrombie Family Interests does not distinguish between Cohen’s various
petitions in its response to Cohen petition for writ of mandamus, instead
referring simply to Cohen’s “pleadings” and the allegations in Cohen’s brief in
this Court in arguing that Cohen has failed to adequately plead a real property
claim.  Real party in interest SE Texas
Note Acquisitions 2010-11, LLC argues that Cohen failed to adequately plead a
real property claim in both his Second and Fourth Amended Petition.   





[4]
          As previously discussed, a
notice of lis pendens is not a lien, but instead operates as a notice
placeholder in the real property records of the plaintiff’s potential interest
in real property.  Specifically, the notice
puts “prospective buyers on notice that they acquire any interest subject to
the outcome of the pending litigation.”  Countrywide, 240 S.W.3d at 4.  Under Countywide,
the analysis would thus compare the date of the pleading containing a real
property claim with the date of any transaction involving the property at issue
to determine if the property interest conveyed in that transaction would be encumbered
by the plaintiff’s property interest, if any, arising in the litigation.





[5]
          Flat Stone II, Ltd. owned the
Bissonnet and Newcastle Properties before the properties were transferred from
Flat Stone II, Ltd. to East Bissonnet, Ltd. and West Newcastle, Ltd.  In the underlying lawsuit here, Cohen seeks
these properties’ return to Flat Stone II, Ltd. 
“[B]ecause Flat Stone II, Ltd. is the sole beneficiary of East
Bissonnet, Ltd. and West Newcastle, Ltd.” and because “Flat Stone II, Ltd.,
East Bissonnet, Ltd., and West Newcastle, Ltd. are all controlled by Matt
Dilick,” these real-parties-in-interest assert that, even if Cohen secured
return of the properties to Flat Stone II, Ltd., the “beneficial interest”
would not change and the “control” over the properties would not change.  Thus, they reason, by seeking return of the
properties to Flat Stone II, Ltd., Cohen does not assert a “real property claim.”