Roger LIVERMAN, Appellant,

v.

Katheryn PAYNE–HALL, Appellee.

No. 08–13–00089–CV

Court of Appeals of Texas,
El Paso.

January 27, 2015

Matthew J. Kita, Dallas, TX, for Appellant.

Albert G. Valadez, Fort Stockton, TX, for Appellee.

Before McClure, C. J., Rodriguez, and Hughes, JJ.

## OPINION

YVONNE T. RODRIGUEZ, Justice

Roger Liverman seeks reversal of an abuse of process and attorney's fees judgment rendered in favor of Katheryn Payne–Hall. In two issues, he contends that Payne–Hall failed to establish that he filed a lawsuit and coordinate lis pendens seeking to void a land transaction in Upton County for an impermissible purpose and with an ulterior motive. We agree. The judgment of the trial court is reversed, and we render judgment that Payne–Hall take-nothing.

## BACKGROUND

Liverman is Payne–Hall's father. This dispute arises out of the death of Victoria Covill—Liverman's mother and Payne–Hall's grandmother. In her will, Covill had named Liverman as the executor and sole heir of her estate. Liverman filed an application to probate Covill's will, but was unable to participate in further probate proceedings or fulfill his duties as executor, since after he submitted the probate application, Liverman was arrested on a

theft charge, pleaded guilty, and began serving a prison term. While in prison, he asked his daughter, Payne–Hall, to manage Covill's estate. Payne–Hall agreed, and Liverman signed a power of attorney granting Payne–Hall the authority to conduct probate proceedings on his behalf. The probate court ultimately named Payne–Hall as independent executor of the Covill Estate.

Liverman was eventually released from prison and began living at a rental house in Krum, Texas, owned by Payne–Hall (the Krum House). The relationship between Liverman and his daughter turned acrimonious, with Payne–Hall accusing Liverman of not paying rent and of stealing from her company. In response, Liverman filed several liens against the Krum House, claiming he was not compensated for repairs he did. On July 27, 2008, Liverman revoked the power of attorney he had granted Payne–Hall. In August 2008, Payne–Hall filed a notice of eviction, and eventually, Liverman was ordered evicted from the Krum House after trial in justice court for failure to pay rent. Payne–Hall also sought to have the liens he placed on the Krum House removed in a suit filed in Denton County.

Meanwhile, Payne–Hall attempted to sell certain Covill Estate real property in Upton County (the Upton Property). Payne–Hall alleged that the highest value offer she received for the property was $10,000 because of the dilapidated condition of the house and the small value of oil well leases on the land. Payne–Hall's husband Joe Hall, acting in his capacity as sole proprietor of Triage Construction,[1] then made an offer to purchase the Upton Property for $17,000, which Payne–Hall accepted. The probate court approved this sale in November 2008, and title passed to Triage Construction. Payne–Hall did not notify Liverman about the sale. Six months later, Triage Construction was dissolved, purportedly because Liverman and his son were performing work using the company's name without authorization and Payne–Hall and her husband wanted to limit their exposure to liability. At that time, title to the Upton Property passed from the company to Payne–Hall and her husband. Payne–Hall's husband later died.

On July 22, 2009, the 393rd District Court in Denton County dissolved the liens on the Krum House, decreeing them fraudulent and assessing damages and fees against Liverman.[2] The Upton County probate court closed Covill's estate on July 2, 2010.

After the Covill Estate was closed, Liverman filed suit against Payne–Hall in Upton County district court, bringing claims for breach of fiduciary duty, conversion, fraud, fraud in a real estate transaction, and fraudulent transfer. He also filed a lis pendens[3] with the Upton County Clerk, designating the Upton Property as being subject to his suit. Payne–Hall countersued. Liverman eventually non-suited his

---

1. Payne–Hall testified that she had previously owned Triage Construction and sold the company to her husband a few months before they were married.

2. At the time of trial in this case, Liverman faced criminal charges in Denton County related to the filing of these liens.

3. "A lis pendens is a notice, recorded in the chain of title to real property warning all persons that certain property is the subject matter of litigation." *B. & T Distribs., Inc. v. White*, 325 S.W.3d 786, 789 (Tex.App.–El Paso 2010, no pet.). "The purpose of a notice of *lis pendens* is to put those interested in a particular tract of land on inquiry about the facts and issues involved in the suit and to put prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation." *Id.*

district court claims and instead filed a bill of review in the Upton County probate court and a breach of fiduciary duty suit in Denton County, where the parties lived. However, Payne–Hall's counterclaims in Upton County district court survived.

In her fourth amended counter-petition, the live pleading in this case, Payne–Hall alleged that Liverman's original suit in Upton County district court challenging her actions related to the Upton Property sale constituted malicious prosecution. She also brought a cause of action for abuse of process, contending that Liverman filed his original suit and the coordinate lis pendens in bad faith. Specifically, her pleadings for abuse of process state:

> In the alternative and without abandoning any of the foregoing claims, Counter–Plaintiff will show that Counter–Defendant has committed the tortuous [sic] act of abuse of process. More particularly, Counter–Plaintiff will show that the Counter–Defendant: (1) made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) that the Counter–Defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) that the damage to the Counter–Plaintiff resulted from such irregular act.

> More specifically, the Counter–Defendant's previous Petition and Temporary Restraining Order and its current Lis Pendens is an abuse of process to accomplish an act other than these civil remedies were designed to accomplish. The Counter–Defendant's previous Petition and Temporary Restraining Order and its current Lis Pendens were not filed because of the good faith belief in the possible merit of the lawsuit since the ownership status of the property was no longer in probate at the time of the filing but instead had already been conveyed to the Counter–Plaintiffs. The Counter–Defendant's litigation was filed in an attempt to harm the Counter–Plaintiff by affecting their ownership interest in and by attempting to coerce them to give up their interest in the real property in Upton County, Texas.

Her two claims proceeded to trial, where she put on evidence showing that her late husband had entered into an agreement to sell the Upton Property for $62,000 after making repairs on the property, but that the deal fell through because of Liverman's lawsuit and the lis pendens he filed. The trial court granted a directed verdict against her malicious prosecution claim, but issued a verdict in favor of her abuse of process claim after a trial on the merits.

Liverman appealed.

## DISCUSSION

Liverman brings two issues on appeal. First, he asserts that his actions could not have constituted abuse of process as a matter of law. Second, he maintains that the trial court erred by allowing Payne–Hall to collect attorney's fees.

### *Standard of Review*

We sustain legal sufficiency challenges if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). "When a legal sufficiency point is sustained, it is our duty to reverse and render." *Heritage Res., Inc. v. Hill*, 104 S.W.3d 612, 619 (Tex.App.–El Paso 2003, no pet.).

### Abuse of Process

■ "Abuse of process is the malicious misuse or misapplication of process in order to accomplish an ulterior purpose." *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex.App.–Texarkana 1989, no writ). In order to recover on a claim for abuse of process, a party must show:

(1) that the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;

(2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and

(3) that damage resulted to the plaintiff as a result of such illegal act.

*Blanton v. Morgan*, 681 S.W.2d 876, 878 (Tex.App.–El Paso 1984, writ ref'd n.r.e.).

■ "The critical aspect of this tort is the improper use of the process after it has been issued." *Jordan v. Jordan*, No. 05–98–01971–CV, 2001 WL 856209, at *2 (Tex.App.–Dallas July 30, 2001, no pet.)(not designated for publication). "To constitute an abuse of process, the process must be used to accomplish an end which is beyond the purview of the process, and which compels a party to do a collateral thing which he would not be compelled to do." *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex.App.–Houston [1st Dist.] 1994, no writ). "[F]iling suit and filing a lis pendens alone do not state a cause of action for abuse of process without alleging that the process was used for an improper purpose after it was issued...." *Jordan*, 2001 WL 856209, at *3.

In *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex.Civ.App.–Houston 1965, no writ), the Houston Court of Appeals, quoting the then-current Restatement of Torts, described the operative abuse of process inquiry as follows:

The purpose for which the process is used, once it is issued, is the only thing of importance.... Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Id.* at 468.

■ As a threshold matter, we note that the parties conflate Liverman's underlying lawsuit with the filing of the lis pendens. However, the filing of a lawsuit and the filing of a lis pendens are two separate acts. The filing of the lawsuit comes first, and the lis pendens serves only as notice in the county deed records that a suit concerning a piece of real estate has been filed. *B & T Distribs., Inc.*, 325 S.W.3d at 789. Liverman asserts that a lis pendens itself cannot support a verdict for abuse of process.[4] We agree. Our sister courts

---

4. Payne–Hall maintains that a lis pendens can form an independent basis for an abuse of process claim, and she cites to and analyzes her abuse of process claim in light of this Court's opinion in *Leon, Ltd. v. Albuquerque*

*Commons P'ship*, 862 S.W.2d 693, 706 (Tex. App.–El Paso 1993, no writ). *Leon* is inapposite, as the Court there was interpreting New Mexico lis pendens law pursuant to a choice-of-law contractual provision. *Id.* at 705–06.

have articulated two rationales as to why. First, a lis pendens constitutes a "privileged" communication made during a judicial proceeding for which no remedy is authorized by law. *Sharif–Munir–Davidson Dev. Corp. v. Bell*, 788 S.W.2d 427, 430 (Tex.App.–Dallas 1990, writ denied). Second, although Payne–Hall maintains that "[t]he mere filing of the notice puts a cloud on the title, interfering with the owner's ability to obtain a loan, or to market the property," a lis pendens causes no actual interference with the property beyond that which occurs from filing suit; it merely reiterates publically available information related to a lawsuit. As such, Payne–Hall cannot not establish that the lis pendens met the third "damage" element of the abuse of process tort because it is derivative of the underlying lawsuit. *Sharif–Munir–Davidson Dev. Corp.*, 788 S.W.2d at 430 (interpreting lis pendens significance for both malicious prosecution and abuse of process torts). The verdict can only stand here if there is legally sufficient evidence to show that Liverman's *filing of suit* was an abuse of process.

The entirety of Payne–Hall's evidence on Liverman's motive consisted of her opinion testimony that she believed Liverman wished to harass her, impede her finances, and discredit her in the Denton County lawsuit. When asked why she believed that, she testified:

A. He made the comment before when he was being evicted that either I sign that house at 201 North Fourth Street in Krum over to him or he would bankrupt me. It would cost me more to get the liens off the house than it would be for me just to sign it over to him and pay it.

So I believe it's all been a financial motive to try to bankrupt me, put me in a position where I can't defend this, and

plus it makes him look better in his criminal trial to have these false allegations against me here in West Texas.

Q. Did he tell you he wanted something from you?

A. He wanted my house at 201 North Fourth Street in Krum.

■■■ In her appellate briefing, Payne–Hall asserts that this suit is a ruse Liverman is using to try and extort her into giving him the Krum house. Assuming that the trial court believed Liverman made those comments, Payne–Hall's testimony about what Liverman told her during his eviction from the Krum house is insufficient to bridge the attenuated link between this lawsuit over the Upton Property and the rental house in Krum. At best, Payne–Hall's testimony on this point creates mere surmise or suspicion that Liverman's Upton County lawsuit was filed to leverage Payne–Hall into giving up the Krum house. But mere surmise or suspicion is legally insufficient to support a verdict. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 30 (Tex.2014). Likewise, Payne–Hall's contention that Liverman stood to gain strategic advantages in his civil and criminal trials in Denton County by filing the Upton County suit as a way to cast aspersions on her credibility is unsupported by more than a scintilla of evidence. A factfinder "may not reasonably infer an ultimate fact from 'meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.'" *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013).

■■■ Finally, Payne–Hall maintains that we can essentially infer Liverman's ulterior motive because his lawsuit was facially meritless and unwinnable, as the

The lis pendens analysis in that case has no bearing on this case.

probate court's now-unappealable order closing the Covill Estate definitively vested Triage Construction with title to the Upton Property. We issue no opinion as to the ultimate merit of Liverman's claims, because such discussion is not germane to the abuse of process analysis here. "Merely issuing or procuring process, even if accompanied by malicious intent or without probable cause, is not actionable." *Jordan*, 2001 WL 856209, at *2. Further, the case Payne–Hall cites in support of her contention as to definitive resolution of a title dispute, *Francis v. Sterling*, 45 S.W.3d 194 (Tex.App.–Tyler 2001, no pet.), is inapplicable. *Francis* dealt with the question of whether a minority shareholder's filing of a lis pendens was proper when he did not technically allege a title dispute in his underlying lawsuit but instead only generally challenged a corporate receiver's ability to conduct a sale of assets. *Id.* at 196. In that case, the company only sought to expunge the lis pendens; it never raised a counterclaim for abuse of process, and the appellate court never discussed abuse of process. *Id.*

In sum, Payne–Hall bore the burden at trial of showing that by filing this suit, Liverman sought to gain something outside the proper scope of the suit. While the record shows a history of litigation and acrimony between the parties, there is no evidence more than a scintilla that would show Liverman filed suit to gain a collateral advantage. The judgment must be reversed and rendered.

Issue One is sustained.

### Attorney's Fees

■ We next turn to the issue of attorney's fees.

■ "Under the American Rule, litigants' attorney's fees are recoverable only if authorized by statute or by a contract between the parties." *Intercontinental*

*Group P'ship v. KB Home Lone Star, L.P.*, 295 S.W.3d 650, 653 (Tex.2009). Payne–Hall concedes in her brief that the trial court did not have a legal basis for granting the attorney's fee award. We agree. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (West 2015). The trial court's award of attorney's fees here was improper.

Issue Two is sustained.

### CONCLUSION

Having overruled Issues One and Two, we reverse the judgment of the trial court and render judgment that Payne–Hall take-nothing.