In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00451-CV**
_____

**RIVER PLANTATION COMMUNITY IMPROVEMENT ASSOCIATION,**
**Appellant**

**V.**

**RIVER PLANTATION PROPERTIES, LLC AND HERMES**
**INTEGRATORS I, LLC, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-07-08266-CV**

**MEMORANDUM OPINION**

River Plantation Community Improvement Association (the Association) appeals from an interlocutory order denying its motion to dismiss, which it filed based on the Texas Citizen's Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003 (West 2015) (right to an interlocutory appeal from rulings on such motions); § 27.005(c) (West 2015) (providing a right to dismissal upon meeting

certain statutory conditions required to justify the dismissal of an action). Under the TCPA, if the conditions triggering a dismissal apply, a party responding to a motion to dismiss must establish that it has prima facie proof on each of the elements of its claim or the trial court must dismiss it. *Id*. § 27.005(b)(2), (c) (West 2015). Because River Plantation Properties, LLC (the Plantation) and Hermes Integrators I, LLC (Hermes) failed to meet this statutory burden on their respective claims alleging the Association intentionally interfered with their respective contracts, we hold the trial court erred by denying the Association's motion to dismiss.[1]

Background

In late December 2016, the Plantation contracted to sell around 297 acres of property (the parent tract) to RVR Ventures, Inc. Historically, the entities that have owned the parent tract used it as a twenty-seven-hole golf course. Three and one-half months later, Hermes Integrators, LLC (H.I.) acquired the right to purchase the parent tract.[2] Seventeen days later, H.I. agreed to sell a portion of the tract, the part that is known as the Charleston course, to DRHI, Inc. DRHI's contract with H.I. reflects that DRHI planned to divide the Charleston course into about 185 single-

---

[1] Our ruling dismissing the appellees' intentional interference claims against the Association does not affect the other claims filed by the Association in the case or the claims that the appellees have filed against each other.

[2] H.I. acquired its rights to the parent tract from Villa Realty Group, Inc., which acquired its rights to purchase the tract from RVR Ventures.

2

family lots, a tract that we reference as the Charleston tract. Around two months later, H.I. assigned Hermes its rights to acquire and resell the Charleston tract to DRHI.

Shortly after the Plantation's lawyer informed the Association of its position that the parent tract could be used for purposes other than for golf, the Association filed a declaratory judgment action, alleging that an easement existed restricting how the Plantation and its successors could use the tract. In its petition, the Association alleged that an implied, reciprocal, negative easement burdened the River Plantation Golf Course, and it claimed that the easement prevented the tract from being used in "a way that would violate" the easement. According to the petition, the River Plantation Golf Course "and the Association were all part of the original developer's intent in the late 1960s to develop a golf course community."

When the Plantation answered the Association's declaratory judgment action, it counterclaimed against the Association. In its counterclaim, the Plantation alleged that the Association had tortiously interfered[3] with its rights to sell the golf course. In its amended counterclaim, the Plantation's live pleading for this appeal, the Plantation alleged:

---

[3] The term "tortious interference" means "the tort of intentionally persuading or inducing someone to breach a contract made with a third party." Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 886 (2d ed. 1995).

3

[The Association] tortiously interfered with the existing contract between [the Plantation] and [Hermes] by intentional[ly] filing its lawsuit against [the Plantation] to halt the sale of the [property]. As a result of the lawsuit, [Hermes] ultimately cancelled the contract for the sale of the [property]. [The Association]'s actions proximately caused [the Plantation] to suffer actual damages."

Two weeks after the Plantation filed its counterclaim, Hermes filed a separate suit against the Association. In its counterclaim, the Plantation alleged that the Association had tortiously interfered with the contract it held with the Plantation to purchase the Charleston tract.[4] In its petition, Hermes alleged that "[a]s a result of [the Association]'s intentional filing of [its] lawsuit against [the Plantation], and [the Plantation]'s failure to convey marketable title of the property [to it] on July 14, 2017, Hermes could not have closed and did not close on the property as agreed to in the purchase contract between Hermes and [the Plantation]."[5] Hermes' petition suggests that because the Association filed its declaratory judgment action, DRHI canceled the contract that it had with Hermes to purchase the Charleston tract, and that as a result, it suffered damages of $10,000,000.

---

[4] Before the trial court ruled on the Association's motion to dismiss, it consolidated the Association's suit, Cause Number 17-07-08266, and Hermes' suit, Cause Number 17-08-09833, into Cause Number 17-07-08266.

[5] Hermes' suit includes a breach of contract claim against the Plantation; our resolution of this appeal does not affect that claim.

In late September 2017, the Association moved to dismiss the claims the Plantation and Hermes filed against it for allegedly interfering with their contracts to acquire and sell the tracts discussed above. According to the Association's motion, Hermes and the Plantation sued it for tortious interference in response to the decision that it made to sue the Plantation for declaratory judgment. The Association contends that the legal actions that it sought to have dismissed were based on, related to, or had been filed against it in response to its suit against the Plantation. *See id.* § 27.003(a) (West 2015) ("If a legal action is based on, relates to, or is in response to a party's exercise of the . . . right to petition, . . . that party may file a motion to dismiss the legal action."). The Association concludes that the actions filed by the Plantation and Hermes violated the TCPA. The Association attached several exhibits for the trial court to consider when evaluating its motion.[6] *See id.* § 27.006(a) (West

---

[6] The exhibits attached to the motion include the Association's original petition for declaratory relief, the Plantation's original answer and counterclaim, Hermes' original petition, the unsworn declaration of Samuel Jones, and the affidavit of Jamie Goodman. Jones, a resident of River Plantation and a member of the Association's Board from 2007-2014, stated in his unsworn declaration that he attended a meeting in late July 2017 at the River Plantation County Club with Edward Blackburne Jr., who owns the golf course through the Plantation. According to Jones, Blackburne threatened to file a counterclaim against the Association during the meeting and to obtain a judgment that would cost the Association's members around $6000 per home. Goodman's affidavit reflects that she is the president of the Association and that Blackburne, at first, had assured her that the entity that planned to purchase the Charleston tract planned to continue to operate it as a golf course. Yet Goodman stated that she subsequently learned from the attorney representing the Plantation that the entity negotiating to purchase the Charleston tract intended to

2015) (allowing the trial court to consider the pleadings and supporting and opposing affidavits in deciding a motion to dismiss under the TCPA).

When the Plantation responded to the motion to dismiss, it argued that the Association was not entitled to have its tortious interference claim dismissed. Under the TCPA, a "court may not dismiss a legal action . . . if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). The Plantation claimed that the pleadings and evidence attached to its response established that section 27.005 required the trial court to deny the Association's request asking to dismiss its claim.

Hermes also responded to the Association's motion to dismiss. Hermes presented two arguments in its response, claiming (1) that the TCPA does not apply; but if it did, (2) the pleadings and evidence attached to Hermes' response established

---

develop the tract for purposes other than golf. According to Goodman, while the Association contemplated the tract would change hands, the Association sued to clarify whether an easement burdened the parent tract and did not sue to interfere with the Plantation's right to sell its property. In her affidavit, Goodman also stated that she first learned that Hermes was the entity that had purchased the parent tract when the Plantation filed its answer. She also stated that she first learned that Hermes planned to sell the Charleston tract to a homebuilder because that information was in Hermes' original petition.

that it had a prima facie basis for its claims that the Association had intentionally interfered with its contracts.[7]

In mid-November 2017, the trial court conducted a hearing on the Association's motion to dismiss. During the hearing, the Association argued that the Plantation and Hermes were both claiming that the Association's tortious acts consisted of its filing of a suit for declaratory judgment and its filing of a notice of lis pendens.[8] After the hearing, the trial court advised the parties it would decide the motion after it had reviewed all the documents the parties had asked it to consider. Two days later, the trial court denied the Association's motion; shortly thereafter,

---

[7] The evidence attached to Hermes' response includes (1) the affidavit of Ricardo Ibrahim, the president of Hermes; (2) Hermes' first amended petition, with attachments; (3) a copy of an assignment agreement, which reveals that Hermes Integrators I, LLC is the entity that had acquired the rights to the contract DRHI signed to acquire the Charleston course; (4) a commercial contract amendment, dated May 10, 2017, signed by representatives of the Plantation and the entity from whom Hermes acquired its rights; (5) the notice of lis pendens, which the Association filed on July 10, 2017; and (6) Hermes' original petition. Ibrahim's affidavit reveals that DRHI cancelled its contract with Hermes "because the property to be purchased was involved in litigation." Ibrahim stated that "[a]s a result of the petition filed by the [Association], Hermes lost a great business opportunity of close to $10,000,000.00, and spent $500,000.00 dollars as part payment of the land."

[8] A "lis pendens" is a notice designed "to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit must be subject to the outcome of the litigation." Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 530 (2d ed. 1995). *See also* Tex. Prop. Code Ann. § 12.007 (West 2014) (allowing a party to file a notice with the county clerk in the county where a part of the property is located stating that an action seeking to enforce an encumbrance against the real property has been filed).

the Association appealed. We note our jurisdiction over the parties and the appeal. *See id.* § 27.008(a) (West 2015).

## Standard of Review

We apply a de novo standard when reviewing rulings on motions to dismiss filed under the provisions that are in the TCPA. *See Shipp v. Malouf,* 439 S.W.3d 432, 437 (Tex. App.—Dallas 2014, pet. denied); *Rehak Creative Servs., Inc. v. Witt,* 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). In reviewing a trial court's ruling on such motions, we consider the pleadings and the evidence that the trial court considered in ruling on the motion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006 (West 2015); *In re Lipsky,* 460 S.W.3d 579, 587 (Tex. 2015).

## Analysis

The TCPA creates a safeguard to protect individuals who are in litigation from retaliation based on the individual's filing of a petition with a court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003. According to the Legislature, the TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" while serving to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002 (West 2015); *see also In re Lipsky,* 460 S.W.3d at 586 (explaining that the TCPA "protects

8

citizens from retaliatory lawsuits"). Here, the Association sought a TCPA remedy by filing a motion invoking the statute's protection of the rights litigants have to petition courts for relief.

When the trial court ruled on the motion to dismiss, the pleadings and evidence before it shows that both Hermes and the Plantation sued the Association after the Association sought the court's assistance in declaring whether an easement burdened the parent tract.[9] For example, the counterclaim that the Plantation filed for tortious interference states that the Association tortiously interfered with its existing contract by "intentional[ly] filing its lawsuit against [River Plantation Properties] to halt the sale of the [property]." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (directing courts to consider pleadings in deciding motions to dismiss that are based on the movant's rights under TCPA). In Hermes' petition, Hermes alleged that the Association tortiously interfered with its contracts by suing the Plantation. Thus, the allegations in the Plantation's and Hermes' live pleadings show that they filed their claims for tortious interference in response to the Association's suit for declaratory judgment. *See id*. § 27.001(4) (West 2015) (broadly defining the

---

[9] We express no opinion about whether the Association will prevail on its claim that an implied, reciprocal, negative easement burdens the parent tract. The TCPA operates unilaterally; that is, it requires the party opposing the motion to dismiss to present some evidence on the elements of its claim, but it does not require the moving party to present evidence on the elements of its own claims.

"[e]xercise of the right to petition" to include "a communication in or pertaining to: . . . a judicial proceeding"). Finally, the affidavit of Samuel Jones reflects that River Plantation's owner threatened the Association with a counterclaim for tortious interference if the Association filed a suit seeking to determine whether an implied easement existed burdening the parent tract.

When the evidence and pleadings trigger the TCPA's provision requiring an action to be dismissed, a trial court must dismiss the claims that are being challenged by the motion unless the parties opposing the motion establish by either direct or circumstantial evidence that their claims are supported by either direct or circumstantial evidence. *Id.* § 27.005(c); *see also In re Lipsky,* 460 S.W.3d at 590-91 (requiring a plaintiff to "provide enough detail to show the factual basis for its claim"). To prevail on a tortious interference with contract claim, a party must show that (1) a contract existed, with which the opposing party interfered, (2) the party who interfered acted willfully or intentionally, (3) the interference proximately caused the injured parties' damages, and (4) actual damages or losses occurred. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 207 (Tex. 2002).

Here, no dispute exists between the parties that the Plantation and Hermes had existing contracts that gave them the right to purchase real estate owned by the Plantation. The contracts for the transactions are among the items the trial court considered in denying the Association's motion. Additionally, Hermes and the

10

Plantation provided the trial court with evidence showing they had been damaged when the transactions did not close. We conclude that prima facie proof is in the record on the first and fourth elements of the Plantation's and Hermes' tortious interference claims.

That said, the parties dispute whether the record contains prima facie evidence to prove that the Association intended to interfere with these contracts. According to the Plantation, a fact issue exists over whether the Association intended to interfere with the transactions at issue because the Association sued only days before Hermes was scheduled to close on its purchase of the parent tract.[10] Hermes relies on this same circumstance for its contract with the Plantation to purchase the parent tract. With respect to its other contract, which contemplated a sale of the Charleston tract to DRHI, Hermes relies on the Association's filing of a notice of lis pendens to argue that the Association intended to interfere with its rights to complete that deal.

Generally, interfering with a contract "is tortious only if it is intentional." *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.,* 843 S.W.2d 470, 472 (Tex. 1992). But proving that the interference is intentional requires proof showing that the party that allegedly

---

[10] Under the real estate sales contract, the feasibility period on the parent tract expired ninety days after the date the title company received a contract executed by all parties. In late March 2017, the Plantation agree to extend the feasibility period for the parent tract to April 19, 2017. In early May 2017, H.I. and the Plantation extended the feasibility period on that same transaction to July 14, 2017.

interfered with the contract intended for the contract to fail. *See id.* (noting that proving intentional interference requires the proponent to prove that the actor desires to cause the consequences of his act, or to prove that the actor believes the consequences are substantially certain to result from it). Before the hearing, the Plantation and Hermes did little to develop evidence about the purpose behind the Association's decision to sue. For example, no depositions from any members of the Association's board are included in their response to the Association's motion, and no internal documents from the Association reveal that the Association's purpose was to cause the real estate transactions to fail. The evidence before the trial court that is relevant to that matter consists of Goodman's affidavit. She states that through its suit, the Association intended to clarify the proper uses for the parent tract and did not intend to delay any potential sales.

It is obvious the Association intentionally sued for declaratory judgment to determine whether an easement burdened the potential uses of the parent tract. But the burden created by the alleged easement arose, if at all, from conduct occurring long before the Planation and Hermes signed the contracts at issue here. Thus, the easement, if it exists, existed long before the transactions at issue in the dispute. Through its declaratory judgment action, the Association sought the court's assistance in determining whether an easement exists, by implication, from the total circumstances behind the development of the River Plantation subdivision. We

conclude that the pleadings and evidence before the trial court when it ruled on the Association's motion established the existence of a bona fide dispute over the existence of the alleged easement on the parent tract. We also conclude that the evidence before the trial court shows the Association sued to clarify whether an easement existed, not to cause any transactions involving the tracts to fail.

Our review of the evidence relevant to the Association's motives in filing suit reveals no evidence showing the Association's board or any of its members had seen the contracts between the Plantation and Hermes, or the contracts between Hermes and DRHI before the Association sued. So, there is no evidence showing that the Association anticipated the prospective purchasers of the tracts at issue would cancel their purchases after being notified that a dispute existed over whether an easement burdened the tracts. Although the Association intentionally filed suit, the Association did not have knowledge about the details of the Plantation's and Hermes' transactions involving the two tracts. Under the circumstances, the timing of the Association's filing of suit does not reasonably support an inference that the Association intended the Plantation's and Hermes' contracts to fail.

For example, the language in the relevant purchase agreements shows that the purchasers of the tracts could have waived their rights to cancel the contracts and that they could have chosen to purchase the tracts. Or, the purchasers could have purchased the tracts knowing that they would need to litigate the Association's claim

over the alleged easement. Under Texas law, establishing a willful and intentional act of interference requires the proponent to show that the actor who interfered "was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under a contract." *Lazer Spot, Inc. v. Hiring Partners, Inc.,* 387 S.W.3d 40, 52 n.22 (Tex. App.—Texarkana 2012, pet. denied) (citing *Funes v. Villatoro,* 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)).

While the Association requested injunctive relief, the injunction it requested would not have prohibited the sale of either the parent tract or the Charleston tract. Instead, the Association asked for an injunction to prohibit the Plantation and any later owners from "using and/or developing and/or attempting to use and/or develop the [parent tract] in such a way that would violate the implied restrictions for use solely as a golf course." Additionally, the Plantation and Hermes have never alleged that they did not have the rights under their contract to close on the parent tract.

Based on the Association's motion to dismiss, the responses to that motion, and the evidence attached to the motion and the responses, we cannot say that the Association has no colorable claim that an easement exists burdening the parent tract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *Evans v. Pollock,* 796 S.W.2d 465, 466 (Tex. 1990). In *Evans,* the Texas Supreme Court explained that an implied, reciprocal, negative easement may arise upon evidence establishing that an owner

14

of real property subdivided the property into lots and then sold many of those lots with restrictive covenants designed to further the owner's general development plan. *Evans,* 796 S.W.2d at 466. The Texas Supreme Court explained the doctrine in this way:

> [W]here a common grantor develops a tract of land for sale in lots and pursues a course of conduct which indicates that he intends to inaugurate a general scheme or plan of development for the benefit of himself and the purchasers of the various lots, and by numerous conveyances inserts in the deeds substantially uniform restrictions, conditions and covenants against the use of the property, the grantees acquire by implication an equitable right, variously referred to as an implied reciprocal negative easement or an equitable servitude, to enforce similar restrictions against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants.

*Id*. (internal citations omitted) (quoting *Minner v. City of Lynchburg,* 129 S.E.2d 673, 679 (Va. 1963)).

On this record, we cannot conclude that ordering the Plantation's and Hermes' tortious interference claims dismissed would be inconsistent with the purposes of the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (revealing that the purpose of the Act was to protect the rights of a person to file a meritorious lawsuit for a demonstrable injury). We hold that the pleadings and evidence considered by the trial court during the hearing on the Association's motion to dismiss failed to establish that the Association willfully or intentionally interfered with contracts

15

between Hermes and the Plantation, or between Hermes and DRHI. *See id.* § 27.005(c); *see also In re Lipsky,* 460 S.W.3d at 590.

Next, we address the arguments raised by Hermes and the Plantation suggesting that the Association's filing of a notice of lis pendens constitutes a tortious act. According to the Association, its filing of a lis pendens was privileged and cannot constitute an act interfering with another's contractual rights. We agree.

"[A] lis pendens constitutes a 'privileged' communication made during a judicial proceeding for which no remedy is authorized by law." *Liverman v. Payne-Hall*, 486 S.W.3d 1, 6 (Tex. App.—El Paso 2015, no pet.); s*ee Prappas v. Meyerland Cmty. Improvement Ass'n,* 795 S.W.2d 794, 799 (Tex. App.—El Paso 2015, Houston [14th Dist.] 1990, writ denied) ("Whereas malice dissolves a qualified privilege, the persistence of an absolute privilege [in filing a lis pendens] does not turn on the presence or absence of good faith."). Thus, a party's filing of a notice of lis pendens "causes no actual interference with the property beyond that which occurs from filing suit; it merely reiterates [publicly] available information related to a lawsuit." *Liverman,* 486 S.W.3d at 6.

Under the circumstances revealed by the record in this case, the Association's filing of a notice of lis pendens did not constitute a tort. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(a) (West 2015) ("This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional,

16

statutory, case, or common law or rule provisions."). We hold that the Association's filing of the notice was privileged. *See id*. § 27.005(d) (West 2015).

In conclusion, the Association established that it was entitled to a ruling dismissing the Plantation's and Hermes' tortious interference claims. *Id*. § 27.005 (West 2015). We reverse the trial court's ruling, we remand the case to the trial court so that it can enter a judgment dismissing the tortious interference claims, and we instruct the trial court to award the Association reasonable attorney's fees, costs, and other expenses incurred by the Association as allowed under the TCPA. *See id.* § 27.009 (West 2015).

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on March 29, 2018
Opinion Delivered August 30, 2018

Before Kreger, Horton and Johnson, JJ.