COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| HECTOR DOMINGUEZ, | § | No. 08-17-00118-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 210th District Court |
| MARVIN DOMINGUEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2014-DCV0981) |
| | § | |

## **O P I N I O N**

This case involves a dispute between Hector Dominguez (Appellant) and Marvin Dominguez (Appellee), father and son, respectively, regarding ownership of property located at 6948 Oveja, El Paso, Texas (the property). After Appellant filed a trespass to try title suit, Appellee countered with affirmative defenses and a tortious interference with contract claim. Following a bench trial, the trial court confirmed that Appellee owned the property in its entirety, declared the property free of any claim of Appellant, and entered judgment in favor of Appellee on his claim of tortious interference. In four issues, Appellant challenges the trial court's judgment. We affirm in part and reverse and render in part.

**Factual Background and Procedural History**

At trial, Appellant and Appellee admitted documents by agreement, and other than their own testimony, no other witnesses testified in the proceeding. Appellant began by describing that he and Appellee purchased the property on October 31, 2008. Appellant identified a Special Warranty Deed with Vendor's Lien, executed on October 31, 2008, as proof that Francisco Z. Acosta and Alberto Acosta, acting in their capacities as successor co-trustees of the Zenaido Acosta and Cristina S. Acosta 2004 Living Trust (the sellers), granted, sold, and conveyed the property known as 6948 Oveja to Appellant and Appellee. Along with the deed, Appellant also identified his signature on the related Deed of Trust which provided a security lien to sellers for a principal loan of $107,000, owed by Appellant and Appellee, as borrowers of the debt.

Appellant further testified that he agreed to loan Appellee $13,000 for their down payment to buy the property. To fund the payment, Appellant testified that he borrowed funds from his bank credit card. Appellant claimed that Appellee promised he would make monthly payments on the property until fully paid, and additionally, he would pay a minimum payment of $109 per month to Appellant's credit card until the original loan of $13,000 was fully reimbursed.

Appellant further claimed that, about February 2014, he became suspicious when Appellee stopped answering his phone or his door when he went to his house to collect the credit card payment. His suspicions led him to the county courthouse where he discovered a Special Warranty Deed executed on March 11, 2013, which purportedly transferred title of the property from joint ownership of Appellant and Appellee, to sole ownership by Appellee. Although the newly discovered deed purportedly contained his signature, Appellant testified it was forged, and, in any case, he was in Mexico on the date the deed was executed. Once again, Appellant testified that

2

Appellee would not answer his phone or open his door to speak with him when he tried to have a discussion. As for the credit card debt, Appellant described that Appellee made payments up to about $5,000, but he owed a balance of $8,000.

On cross-examination, Appellant acknowledged that the loan funded from his credit card was never documented in writing. When Appellant was next shown a Durable Power of Attorney dated March 11, 2013, which empowered Appellee to act as Appellant's agent for any transaction, Appellant denied he had signed the instrument even though, on its face, his signature showed it was acknowledged by a notary and two other witnesses. Lastly, when Appellant was shown a Warranty Deed dated June 2013, which purportedly displayed his own signature and that of Modesta Dominguez, his former wife, Appellant testified that both signatures were valid even though other evidence admitted at trial established that his wife had been deceased for over three years from the date of execution. Appellant completed his testimony stating that he had not been aware that Appellee was selling the property to another party until after he filed his lawsuit and later learned about the contracts for sale during a deposition.

When Appellee took the stand, he contradicted Appellant's testimony principally from the point that Appellant accused him of fraudulently transferring title from their joint ownership to his individual ownership. In his defense, Appellee testified that Appellant himself personally prepared the deed dated March 11, 2013, which conveyed title over the property from Appellant and Appellee, jointly, to Appellee in its entirety. Appellee testified he recognized his own signature, and that of Appellant's, as shown on the face of the deed that was entered of record. Appellee testified that he and Appellant had signed the deed at the same time on the trunk of his car. As for the later deed that followed, Appellee identified the deed at trial and testified that he received it

3

from his father. Appellee explained that he had wanted to add his wife to the title of the property, but he did not want to spend money to hire an attorney. Instead, he asked his father for help, which he provided, but it took a while to get it. He and his wife signed the deed that Appellant provided on August 27 and they filed it the next day.

Appellee further testified that he never borrowed money from his father to purchase the property, and instead, he bought the property wholly on his own. He testified that he later lost two opportunities to sell the property. To establish proof, two contracts for sale were admitted into evidence. Appellee testified the first contract was signed by the purported buyer on October 2, 2014, for a purchase price of $139,000. The second had a prospective execution date of June 10, 2015, and a purchase price of $135,000. Appellee further testified he was unable to complete either transaction explaining that "[b]ecause of [Appellant's] lawsuit against me." Appellee added, "I tried selling the property, title company came back, can't do it because of the lawsuit."

*Pleadings of the Parties*

On March 27, 2014, Appellant filed his original petition for trespass to try title against Appellee. Appellant's petition described that he and Appellee were initially granted title to the property by means of a Special Warranty Deed with Vendor's Lien dated October 31, 2008, which he attached to his petition. Appellant's suit alleged that, after they had acquired the property, Appellee fraudulently transferred title into his own name by a Special Warranty Deed dated March 11, 2013. Appellant further claimed that Appellee later transferred the property a second time by means of a Special Warranty Deed dated August 27, 2013, by which he conveyed his sole ownership to joint ownership by himself and his wife, Perla Marisol Dominguez. By his suit, Appellant sought judgment to establish title and right to possession of the property and to remove

4

Appellee as registered owner in the public records of El Paso County, Texas. In responding, Appellee denied Appellant's claim and filed his own counter suit against Appellant. Among other allegations, Appellee accused Appellant of disturbing his quiet possession of title, using fraudulent and forged documents, and tortiously interfering with an existing contract of sale of property.

At the conclusion of the proceeding, the trial court ruled in open court that Appellant did not carry his burden of proving his claim of trespass to try title, confirmed title in favor of Appellee, ordered the property be cleared of any cloud of title, and awarded $135,000 to Appellee on his counterclaim for tortious interference with a contract of sale. The trial judge plainly stated that Appellant's testimony was not credible. At a later hearing on the entry of judgment, the trial court added, "I didn't find that it was a frivolous claim. I just didn't believe him, as the trier of fact . . . he was not credible and not believable and I did not give his testimony any weight."

The final judgment denied all of Appellant's claims, ordered that the Special Warranty Deed at issue evidenced a valid transfer of property from Appellant to Appellee, and removed any claims or cloud of title from the Oveja property. On the counterclaim of tortious interference with an existing contract, the judgment also awarded Appellee $135,000 as the principal amount due, $13,851.37 for pre-judgment interest to increase daily by $18.49 until the date the Judgment was signed, and post-judgment interest at a rate of 5 percent per annum. Thereafter, following entry of the judgment, Appellant filed an initial request for findings of fact and conclusions of law, a motion for new trial, and eventually, a notice of past-due findings and conclusions. After the trial court denied the motion for new trial, Appellant filed his notice of appeal. Later, the trial court signed an order setting a supersedeas bond of $150,000.

On appeal, Appellee filed a motion to dismiss with this Court based on Appellant's failure

5

to post the supersedeas bond ordered by the trial court. In denying Appellee's motion to dismiss, we noted that Appellant's failure to supersede the judgment did not divest him of his right to appeal; but we also noted that the mere filing of the notice of appeal did not suspend enforcement of the trial court's judgment. Consequently, the order of this Court warned that "Appellee may enforce the judgment, and this may result in the appeal becoming moot which would subject it to dismissal at a later point in these proceedings."

## DISCUSSION

By this appeal, Appellant challenges the trial court's denial of his trespass to try title claim based on his assertion that fraudulent documents were used to transfer title of the property to Appellee; and he further challenges the court's judgment against him on Appellee's counterclaim of tortious interference with an existing contract. Listed in order, Appellant's first issue challenges the trial court's judgment in favor of Appellee's counterclaim on grounds of legal insufficiency; his second issue contends that any interference with a contract was justified even if the evidence was sufficient to support the counterclaim; his third issue relates to the trial court's failure to issue written findings of fact and conclusions of law; and his fourth issue challenges the court's denial of his trespass to try title claim. Appellee responds not only that the trial court's rulings were properly supported by the record but also asserts that Appellant's entire appeal is moot because the property subject of this appeal has already been sold.

Because we must address the contention of mootness at the outset, we begin with the title dispute advanced in the fourth issue.

### *Whether the Sale of the property at Issue Renders the Appeal Moot*

In Issue Four, Appellant asserts that the trial court erred in denying his claim for trespass

6

to try title. Appellant argues that he sought to reestablish himself as owner of an interest in the property subject of the suit by means of the Special Warranty Deed with Vendor's Lien dated October 31, 2008. He further argues that the title to the property was affected by the purported Special Warranty Deed dated March 11, 2013, which transferred his interest in its entirety to Appellee. Appellant asserted he did not sign the deed of March 2013 and testified that he was out of the country on that date. Regardless of whether Appellant filed a claim of trespass to try title, his briefing argues that both sides presented the case as a suit to quiet title.

Responding, Appellee asserts that Appellant's fourth issue has become moot given that the property has already been sold. He argues that the trial court's judgment not only provided that the 2013 deed from Appellant to Appellee was a valid transfer of property, the judgment also removed the lis pendens placed on the property. He points out that Appellant chose not to supersede the judgment as provided by Rule 24 of the Texas Rules of Appellate Procedure. *See* TEX.R.APP.P. 24.1, 24.2. And, this Court's order denying Appellee's motion to dismiss plainly warned that Appellee could enforce the judgment given that a bond had not been posted. The order further warned that such enforcement would result in the appeal becoming moot and subject to later dismissal.

A case becomes moot if a controversy ceases to exist at any stage of the proceedings, including the appeal. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Appellate courts lack jurisdiction to decide moot controversies and render advisory opinions. *See Nat'l Collegiate Athletic Assoc. v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). The mootness doctrine implicates a court's subject matter jurisdiction, and such jurisdiction is essential to a court's power to decide a case. *State v. Naylor*, 466 S.W.3d 783, 791-92 (Tex. 2015). A

7

trespass to try title suit may be brought to determine which party has superior title to a piece of property. TEX.PROP.CODE ANN. § 22.001; *Texas Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 389 (Tex. 2011). A suit to quiet title declares invalid another party's claim to title. *Vernon v Perrien*, 390 S.W.3d 47, 60 (Tex.App.—El Paso 2012, pet. denied). As a statutory cause of action, a trespass to try title accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy. *Vernon*, 390 S.W.3d at 61.

The sale of property at issue can render moot those issues relating to the property. *F.D.I.C. v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994); *Estate Land Co. v. Wiese*, 546 S.W.3d 322, 326-27 (Tex. App. – Houston [14th Dist.] 2017, pet. denied); *Moss-Schulze v. EMC Mortg. Corp.*, 280 S.W.3d 876, 877 (Tex. App. – El Paso 2008, pet. denied). An exception to this general rule about mootness, however, recognizes that a sale of property that forms the basis of the litigation will not render moot such issues related to separate claims for damages that do not depend on possession of the property. *See Kyle v. Strasburger*, 522 S.W.3d 461, 466-67 (Tex. 2017); *River and Beach Land Corp. v. O'Donnell*, 632 S.W.2d 885, 888 (Tex. App. – Corpus Christi 1982, no pet.); *Medrano v. Hinojosa*, No. 04-14-00913-CV, 2016 WL 3085935, at *2-3 (Tex. App. – San Antonio June 1, 2016, no pet.) (mem. op.).

Here, after reviewing Appellant's reply brief, we accept the sale of the property as being an established fact given that Appellee's assertion of the property having been sold has not been disputed. TEX.R.APP.P. 38.1(g) (appellate courts in civil cases accept as true facts stated in a brief unless another party contradicts them); *see also Epicous Adventure Travel, LLC v. Tateossian, Inc.*, 573 S.W.3d 375, 389 (Tex. App. – El Paso 2019, no pet.); *Guillen v. U.S. Bank, N.A.*, 494 S.W.3d 861, 865-66 (Tex. App. – Houston [14th Dist.] 2016, no pet.) (cases accepting as true facts

8

asserted in a brief on appeal where they were not challenged by another party). Given the circumstances, we find that the sale of the property at issue renders Appellant's fourth issue moot due to the nature of the relief requested. *See F.D.I.C.*, 886 S.W.2d at 767 ("The controversy in this case involved the rights of the taxing authorities and the FDIC as competing lienholders . . . The FDIC ceased being a lienholder when it foreclosed on and purchased the property; after that, the controversy between the parties ended."); *Wiese*, 546 S.W.3d at 326 ("Because appellants did not seek an emergency stay, supersedeas bond, or otherwise suspend the enforcement of the trial court's post-judgment orders, the sale of the property at issue was completed and, as such, the issues in this case must be dismissed as moot."); *Moss-Schulze*, 280 S.W.3d at 877 ("Because the property which was the subject of this appeal has been sold, any judgment issued by the Court would have no effect as there is no longer a controversy to resolve."). Because our decision cannot have a practical effect on the ownership rights of the property, we find that the title controversy between the parties has ended and we lack subject matter jurisdiction. *See F.D.I.C.*, 886 S.W.2d at 767; *Wiese*, 546 S.W.3d at 326; *Jones*, 1 S.W.3d at 86.

As for the remaining issues, however, we find that the rule against mootness does not apply. Appellant's first and second issue squarely challenge the trial court's award of damages on Appellee's counterclaim of tortious interference with a contract, and his third issue merely asserts that the trial court erred by failing to issue written findings of fact and conclusions of law. Given that the first three issues do not request relief dependent on possession of the property, they stand apart from the fourth issue and are not rendered moot by Appellee's sale of the property. *See Strasburger*, 522 S.W.3d at 466-67 (rejecting appellee's argument that sale of the property at issue in the appeal rendered moot the appellant's claims to declare a lien and special warranty deed

invalid where the invalidity of the documents provided the basis for several of appellant's remaining claims involving fraud, the Finance Code, and the DTPA); *O'Donnell*, 632 S.W.2d at 888 (holding that foreclosure of the property at issue did not render appellant's issues regarding money damages moot); *Medrano*, 2016 WL 3085935, at \*2-3 (holding that the appellant's challenges to evidentiary rulings by the trial court were not moot because they would affect appellant's claims for breach of contract, fraud, and unjust enrichment even though appellant's challenges with regard to the substance of a declaratory judgment were moot in light of the fact that the appellee had no right or interest in the real property that was the subject of the appeal due to foreclosure of the property).

As a result of the sale of the property during the pendency of this appeal, Appellant's challenge to the judgment against him on his trespass to try title claim became moot. Consequently, Issue Four is overruled.

### *The Tortious Interference-with-an-Existing-Contract Claim*

We begin with Issue One asserting that the evidence at trial was insufficient to sustain the court's judgment in favor of Appellee's counterclaim of tortious interference with a contract. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony, and a reviewing court must not substitute its own judgment for that of the fact finder. *Id*. at 819.

10

To establish a claim for tortious interference with a contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Serv. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). To succeed on a legal insufficiency challenge, a defendant must show that there is no evidence to support at least one element of the claim. *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995).

In this case, the evidence relevant to Appellee's counterclaim for tortious interference with an existing contract showed that Appellee was unable to complete two separate contracts for sale of the property, dated October 2, 2014, and June 10, 2015, respectively, due to Appellant's filing of the underlying lawsuit challenging his ownership of the property along with a lis pendens. Appellant's original petition was filed on March 27, 2014. Appellant testified he did not become aware that Appellee was selling the property until the discovery phase of trial began. However, the trial court found his testimony not credible and gave it no weight. We must therefore disregard this testimony from Appellant in our sufficiency review. *See Wilson*, 168 S.W.3d at 819.

Nonetheless, the timeline of events established by documentary evidence showed that Appellant's lawsuit was filed long before the dates of the two contracts for sale of the property which were made the basis of Appellee's counterclaim. In other words, there was no existing contract subject to interference at the time Appellant filed his lawsuit and thus no sufficient evidence proving the first element of Appellee's claim for tortious interference with an existing contract. *See Hansen*, 525 S.W.3d at 689; *see also BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 570-71 (Tex. App. – Houston [1st Dist.] 2014, no pet.) (granting

11

defendant's no-evidence motion for summary judgment on claims for tortious interference with an existing contract where there was no evidence of an existing agreement at the time of the allegedly tortious conduct); *cf. Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926-27 (Tex. 1993) (addressing solely the second element of the tortious-interference-with-an-existing-contract claim but observing in its sufficiency analysis that no evidence was offered to show that the allegedly tortious acts occurred before the contract ever began).

Furthermore, the record shows no evidence bearing on whether Appellant's filing of a lawsuit was willfully and intentionally done to interfere with an existing contract for sale of the property or, perhaps, for some other purpose. And while the trial court found Appellant's testimony not credible, when discussing its denial of Appellant's claim of trespass to try title, the court expressly stated, "I didn't find that it was a frivolous claim. I just didn't believe him . . . ." On review, we find the evidence was legally insufficient to prove an act willfully and intentionally done as required by the second element of a tortious interference with an existing contract claim. *See Hansen*, 525 S.W.3d at 689; *see also River Plantation Cmty. Improvement Ass'n v. River Plantation Prop., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *5 (Tex. App. – Beaumont Aug. 30, 2018, no pet.) (mem. op.) (holding that there was no evidence to support an inference that the counter defendant committed an intentional act of interference where: (1) the evidence was not developed to show the purpose behind the lawsuit was to cause the counter plaintiff's real estate transactions to fail; and (2) the counter defendant's filing of its lawsuit arose "long before" the contract at issue).

Aside from Appellant's filing of a lawsuit, Appellee also testified that a lis pendens was filed on the Oveja property. But neither can the filing of a lis pendens support Appellee's claim

12

because a lis pendens is absolutely privileged in an action for tortious interference of contract and does not constitute interference as a matter of law. *Chale Garza Inv., Inc. v. Madaria*, 931 S.W.2d 597, 600 (Tex. App. – San Antonio 1996, writ denied); *River Plantation*, 2018 WL 4120252, at *7 (citing *Liverman v. Payne-Hall*, 486 S.W.3d 1, 6 (Tex. App. – El Paso 2015, no pet.)).

Finding the evidence legally insufficient to support the first two elements of tortious interference with a contract, we sustain Issue One. Due to our resolution of this issue, we need not address Issue Two and Issue Three.

## CONCLUSION

Having overruled Issue Four, we affirm the portion of the judgment denying Appellant's trespass to try title claim. Having sustained Issue One, we reverse the portion of the judgment awarding damages to Appellee on his tortious interference with a contract claim and render a take-nothing judgment on that claim.

GINA M. PALAFOX, Justice

August 16, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

13